IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| SOCIALCOASTER, INC., d/b/a BVIRAL | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. _____ |
| ADME (CY) LTD, d/b/a THESOUL PUBLISHING, | ) ) JURY TRIAL DEMANDED ) ) |
| Defendant. | ) |

## COMPLAINT

Plaintiff SocialCoaster, Inc., d/b/a BVIRAL ("Plaintiff" or "BVIRAL") by and through counsel, files this Complaint against ADME (CY) LTD, d/b/a TheSoul Publishing ("TheSoul Publishing" or "Defendant") and states as follows:

### THE PARTIES

1. Plaintiff BVIRAL is a corporation organized under the laws of the State of Delaware, with its principal place of business at 1441 US Highway 96 W, Suite 2 #120, Franklin, Tennessee 37064.

2. Upon information and belief, Defendant TheSoul Publishing is an entity organized under the laws of the country of Cyprus with its principal place of business at 62 Agiou Athanasiou Avenue, Office 101, Limassol, 4102, Cyprus.

### JURISDICTION AND VENUE

3. The Court has personal jurisdiction over Defendant because Defendant has sufficient contacts with this forum such that it has purposefully availed itself of the privilege of

conducting activities within this state, including a substantial part of the activities that give rise to Plaintiff's causes of action, all of which were targeted to this forum state.

4. The Court has subject matter jurisdiction over this action because it arises under the laws of the United States pursuant to 28 U.S.C. § 1331.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district. Upon information and belief, Defendant is not a resident of the United States as it relates to venue analysis. *See* 28 U.S.C. § 1391(c)(3).

## FACTUAL BACKGROUND

6. This is a Complaint for, *inter alia*, copyright infringement by BVIRAL against TheSoul Publishing for TheSoul Publishing's exploitation and monetization of BVIRAL's copyright-protected content and for TheSoul Publishing's subsequent—and fraudulent—issuance of counter notices pursuant to the provisions of the Digital Millennium Copyright Act ("DMCA"). As set forth herein, BVIRAL seeks monetary damages—including statutory damages and its attorneys' fees and costs—in addition to injunctive relief restraining TheSoul Publishing from engaging in infringing activity relating to BVIRAL's content on online platforms, including Facebook.

7. BVIRAL is a tech-centric media publisher & entertainment studio. Among other things, BVIRAL acquires rights in and monetizes online viral videos. Through this process, BVIRAL obtains exclusive intellectual property rights in these videos.

8. Upon information and belief, TheSoul Publishing is an entity in the business of generating and exploiting online content.

9. This case involves the online video titled "Making Resin Waves", (the "Content"), online content in which BVIRAL acquired exclusive rights as set forth below.

10. BVIRAL acquired intellectual property rights in the Content pursuant to an Exclusive License Agreement, (the "ELA") dated September 26, 2019, with Ann Upton, the Content creator, (the "Creator"). A true and accurate copy of the ELA, redacted to exclude information irrelevant to this action, is attached hereto as **Exhibit A**.

11. Pursuant to the ELA, BVIRAL obtained "an exclusive, sub-licensable, transferable, royalty-free and irrevocable license" of the Content. (*See* Ex. A, ¶ I.1).

12. The transfer included a broad grant of rights to BVIRAL, including:

> the exclusive and unlimited right to manage, use, refrain from using, change, alter, edit, modify, add to, adapt, subtract from and rearrange the Licensed Material and to exhibit, distribute, broadcast, reproduce, license others to reproduce and distribute, advertise, promote, perform, publish and otherwise exploit the Licensed Material by any and all methods or means, whether now known or hereafter devised, in any manner and in any and all media throughout the world, including without limitation in Media and throughout Distribution Channels, in perpetuity, by itself, its successors or assigns, for any purpose whatsoever as Licensee in its sole discretion may determine, including for the purpose of marketing, advertising, exploitation, and promotion

(*Id.*, ¶ I.2).

13. Finally, as relevant here, the ELA granted BVIRAL the right to engage in any-and-all copyright enforcement actions with respect to the Content:

> the exclusive right to irrevocably appoint Licensee as its attorney-in-fact to take any such action as may from time to time be necessary to effect, transfer, or assign the rights granted to Licensee herein, including without limitation copyright-related actions, and assigns to Licensee the right to enforce all claims and prosecute actions against any and all claims from the past, present, and future use of the Licensed Material by unauthorized third parties

(*Id.*, ¶ I.3).

14. In connection with ELA, the Creator made certain representations and warranties relevant to this action and with respect to the Content.

15. First, the Creator represented and warranted that "has the full right, power and authority to enter into, full perform, and grant the rights under Section I." (*Id.*, ¶ III.1).

16. Second, the Creator represented and warranted that the Creator "is the sole and exclusive owner of the entire worldwide right, title and interest (including the copyrights and all property rights) in and to" the Content. (*Id.*, ¶ III.2).

17. Third, the Creator represented and warranted that the Creator "has not previously entered into any other agreement in connection with the Licensed Material and has not done or permitted to be done anything which may curtail or impair any of the rights granted" to BVIRAL under the ELA. (*Id.*, ¶ III.4).

18. In exercising its rights under the ELA and exploiting the Content through online channels, BVIRAL determined that Defendant was posting and monetizing videos or similar content online which infringed upon BVIRAL's rights in the Content pursuant to the ELA, (the "Infringing Post").

19. As a result, BVIRAL issued a takedown notice to Facebook, the digital service provider (the "DSP") on which Defendant made the Infringing Post, pursuant to the provisions of the DMCA. *See* 17 U.S.C. § 512(g)(1). A true and accurate copy of the correspondence from the DSP confirming its receipt of the DMCA takedown notice is attached hereto as **Exhibit B**.

20. Pursuant to this notice, the DSP removed Defendant's Infringing Post.

21. Defendant submitted a counternotice to the DSP in which it alleged that it has rights in the Content such that the Infringing Post should not have been removed from the DSP. This statement was made under penalty of perjury. *See* 17 U.S.C. § 512(g)(3)(C). A true and accurate

copy of the correspondence from the DSP regarding Defendant's counternotice is attached hereto as **Exhibit C**.

22. As set forth on Exhibit C, the DSP notified BVIRAL of Defendant's counternotice on March 9, 2024.

23. Pursuant to the terms of the DMCA, BVIRAL is required, within ten (10) business days of receipt of Defendant's counternotice, to file a copyright infringement lawsuit and notify the DSP that BVIRAL "has filed an action seeking a court order to restrain [Defendant] from engaging in infringing activity relating to the material on the [DSP's] system or network." *See* 17 U.S.C. § 512(g)(2)(C).

24. Upon information and belief, Defendant has no intellectual property rights in the Content. BVIRAL executed the ELA with the Creator almost five years ago. The ELA grants BVIRAL exclusive rights in the Content. To the extent that Creator attempted to grant any rights to Defendant in the Content after that time, such attempt at a grant of rights would have been ineffective.

25. As noted above, Creator represented and warranted to BVIRAL in the ELA that Creator had exclusive rights in the Content and that Creator had not entered into any such similar agreement with any third party. (*See* Ex. A, ¶¶ III.1, 2, and 4).

26. Prior to issuing its original DMCA takedown, BVIRAL reached out to Defendant multiple times via email and advised it of its exclusive rights in the Content along with a copy of the ELA. Defendant never responded to these email communications. A true and accurate copy of these email communications is attached hereto as **Exhibit D**.

27. Instead, upon receiving the takedown notice, Defendant fraudulently and materially misrepresented to the DSP that Defendant had a valid license with Creator and that Defendant had

attempted to engage with BVIRAL regarding a resolution. (*See* Ex. C). These statements, made under penalty of perjury, are false.

28. Based on the foregoing, and on Defendant's material misrepresentations to the DSP, BVIRAL has been left with no choice but to seek the intercession of the Court and assert the following claims for both monetary and injunctive relief:

## COUNT I – COPYRIGHT INFRINGEMENT
### 17 U.S.C. § 501 *et seq.*

29. The allegations contained in the foregoing Paragraphs are incorporated herein by reference and made a part of this Count as if fully set forth herein.

30. At all relevant times, BVIRAL has owned all intellectual property rights, including rights in the copyrights to, the Content.

31. Defendant has infringed on BVIRAL's copyright in the Content by knowingly and willfully posting the Infringing Post on the DSP, and subsequently, seeking that the DSP restore the post through a fraudulent counternotification under the DMCA.

32. As further set forth above, and based on Defendant's material misrepresentations, this copyright infringement was willful.

33. Defendant is liable for copyright infringement pursuant to 17 U.S.C. § 501.

34. As a result of Defendant's infringement, BVIRAL has suffered and continues to suffer actual damages in lost profits, opportunity, and goodwill.

35. BVIRAL seeks its actual damages, statutory damages, disgorgement of Defendant's profits, attorneys' fees and costs, and injunctive relief as set forth in the Prayer for Relief below, in connection with this claim.

## COUNT II – MATERIALLY MISREPRESENTING DMCA COUNTERNOTICE
## 17 U.S.C. § 512(f)

36. The allegations contained in the foregoing Paragraphs are incorporated herein by reference and made a part of this Count as if fully set forth herein.

37. Pursuant to the terms of the DMCA:

> Any person who knowingly materially misrepresents under this section that material or activity was removed or disabled by mistake or misidentification shall be liable for any damages, including costs and attorneys' fees, incurred by the alleged infringer, by any copyright owner or copyright owner's authorized licensee, or by a service provider, who is injured by such misrepresentation, as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing, or in replacing the removed material or ceasing to disable access to it.

17 U.S.C. § 512(f) (cleaned up).

38. As set forth above, Defendant has violated this provision by fraudulently and materially misrepresenting to the DSP that Defendant had intellectual property rights in the Content.

39. BVIRAL has been injured as a result of this fraudulent and material misrepresentation, and has had to initiate this action as a result of this fraudulent and material misrepresentation.

40. As a result, Defendant is further liable to BVIRAL for its actual damages, and attorneys' fees and costs in bringing this action.

## PRAYER FOR RELIEF

WHEREFORE, BVIRAL demands judgment of the Defendant as follows:

1. For temporary and permanent injunctive relief enjoining and restraining Defendant from infringing on BVIRAL's intellectual property rights, including its rights in the Content, on the DSP and on any other online digital service providers; and

2. For compensatory damages; and

3. For statutory damages; and

4. For disgorgement of Defendant's profits; and

5. For its attorneys' fees and costs for bringing this action; and

6. For the costs of this cause, and

7. For such other and further General Relief as may be appropriate.

## JURY DEMAND

BVIRAL demands a jury.

This the 8th day of April 2024.

Respectfully submitted,

/s Jacob T. Clabo
Jacob T. Clabo, TN BPR No. 36760
Shackelford Bowen McKinley & Norton, LLP
1 Music Circle South, Suite 300
Nashville, TN 37203
Tel: (615) 329-4440
Fax: (615) 329-4485
jclabo@shackelford.law

*Attorney for Plaintiff SocialCoaster, Inc. d/b/a BVIRAL*