| | |
|---|---|
| SOCIAL COASTER, INC., d/b/a BVIRAL, | ) ) |
| Plaintiff/Counter-Defendant, | ) ) |
| v. | ) ) |
| ADME (CY) LTD, d/b/a THESOUL PUBLISHING, | ) ) ) |
| Defendant/Counter-Plaintiff, | ) ) |
| v. | ) ) |
| Jonathan Burdon, | ) ) |
| Counter-Defendant. | ) |

Chief Judge William L. Campbell, Jr.

Magistrate Judge Alistair Newbern

Case No. 3:24-cv-404
JURY TRIAL DEMANDED

## ANSWER AND COUNTERCLAIMS

Defendant ADME (CY) LTD, d/b/a TheSoul Publishing ("Defendant" or "TheSoul" or "TheSoul Publishing") by and through counsel, Answers the Complaint of SocialCoaster Inc., d/b/a BVIRAL (Plaintiff" or "BVIRAL") and states as follows:

### THE PARTIES

1. Defendant is without sufficient information or knowledge to admit or deny the factual allegations in this paragraph, and thus deny them on that basis.

2. Admit.

### JURISDICTION AND VENUE

3. This paragraph contains legal conclusions and assertions of law to which no response is required. To the extent a response is required, Defendant denies.

1

4. This paragraph contains legal conclusions and assertions of law to which no response is required. To the extent a response is required, Defendant denies.

5. This paragraph contains legal conclusions and assertions of law to which no response is required. To the extent a response is required, Defendant denies, with the exception that Defendant admits that it is not a resident of the United States.

## FACTUAL BACKGROUND

6. No response to the statements made in this paragraph is required as it contains a summary of what Plaintiff contends it will show by way of the Complaint and is not a discrete factual assertion. To the extent a response is required, Defendant denies.

7. Defendant is without sufficient information or knowledge to admit or deny the factual allegations in this paragraph, and thus denies them on that basis.

8. Defendant admits that it is an award-winning digital studio that is one of the world's most prolific and popular online media companies. Defendant denies any characterizations in this paragraph inconsistent with the foregoing.

9. Defendant admits that Plaintiff's lawsuit purports to involve allegations regarding an online video titled "Making Resin Waves" (the "Content"). Defendant denies all other allegations in this paragraph.

10. Defendant is without sufficient information or knowledge to admit or deny the factual allegations in this paragraph and thus denies them on that basis. Answering further, this paragraph references and characterizes a written document which speaks for itself. Defendant denies any allegation in this paragraph inconsistent with the referenced document.

11. This paragraph references and characterizes a written document which speaks for itself. Defendant denies any allegation in this paragraph inconsistent with the referenced

document. This paragraph also contains legal conclusions and assertions of law to which no response is required. To the extent a response is required, Defendant denies.

12. This paragraph references and characterizes a written document which speaks for itself. Defendant denies any allegation in this paragraph inconsistent with the referenced document.

13. This paragraph references and characterizes a written document which speaks for itself. Defendant denies any allegation in this paragraph inconsistent with the referenced document.

14. This paragraph references and characterizes a written document which speaks for itself. Defendant denies any allegation in this paragraph inconsistent with the referenced document.

15. This paragraph references and characterizes a written document which speaks for itself. Defendant denies any allegation in this paragraph inconsistent with the referenced document.

16. This paragraph references and characterizes a written document which speaks for itself. Defendant denies any allegation in this paragraph inconsistent with the referenced document.

17. This paragraph references and characterizes a written document which speaks for itself. Defendant denies any allegation in this paragraph inconsistent with the referenced document.

18. This paragraph references and characterizes a written document which speaks for itself. Defendant denies any allegation in this paragraph inconsistent with the referenced document. Defendant is without sufficient information or knowledge to admit or deny what

3

Case 3:24-cv-00404    Document 14    Filed 08/04/24    Page 3 of 19 PageID #: 58

BVIRAL "determined." Defendant denies that it infringed on any of BVIRAL's copyrights or other rights with respect to the Content. Defendant further denies that the so-called Infringing Post contained the Content.

19. This paragraph contains legal conclusions and assertions of law to which no response is required. Admit that BVIRAL issued a takedown notice to Facebook but deny that the so-called Infringing Post contained the Content. The allegations in this paragraph also reference and characterize a written document which speaks for itself. Defendant denies any allegation in this paragraph inconsistent with the referenced document.

20. Admit that Facebook took down a posting on account of Plaintiff's notice to Facebook. Defendant denies that it infringed on the Content.

21. Admit that Defendant submitted a counternotification with respect to Plaintiff's takedown notice but denies that the counternotification was sent with respect to the Content. Rather the BVIRAL's takedown notice and Defendant's counternotification was in response to other content created by the Creator. The allegations in this paragraph further reference and characterize a written document which speaks for itself. Defendant denies any allegation in this paragraph inconsistent with the referenced document. This paragraph also contains legal conclusions and assertions of law to which no response is required.

22. The allegations in this paragraph reference and characterize a written document which speaks for itself. Defendant denies any allegation in this paragraph inconsistent with the referenced document.

23. This paragraph contains legal conclusions and assertions of law to which no response is required. To the extent a response is required, Defendant denies on that basis.

24. This paragraph contains legal conclusions and assertions of law to which no

4

response is required. To the extent a response is required, Defendant denies such allegations on that basis. Answering further, the allegations in this paragraph also reference and characterize a written document which speaks for itself. Defendant denies any allegation in this paragraph inconsistent with the referenced document.

25. The allegations in this paragraph reference and characterize a written document which speaks for itself. Defendant denies any allegation in this paragraph inconsistent with the referenced document.

26. The allegations in this paragraph reference and characterize written documents which speak for themselves. Defendant denies any allegation in this paragraph inconsistent with the referenced document. Answering further, the DMCA takedown notice does not reference the Content.

27. Denied.

28. Denied.

## COUNT I – COPYRIGHT INFRINGEMENT
### 17 U.S.C. § 501 *et seq.*

29. Defendant's statements contained in the foregoing paragraphs are hereby restated and incorporated herein by reference as if fully set forth herein.

30. Denied.

31. Denied. Answering further, the so-called Infringing Post did not contain the Content.

32. Denied.

33. Denied.

34. Denied.

35. No response is required to the allegations in this paragraph as it purports to set forth

5

what relief Plaintiff seeks in this lawsuit. To the extent a response is required, Defendant denies.

### COUNT II – MATERIALLY MISREPRESENTING DMCA COUNTERNOTICE
### 17 U.S.C. § 512(f)

36. Defendant's statements contained in the foregoing paragraphs are hereby restated and incorporated herein by reference as if fully set forth herein.

37. This paragraph purports to quote 17 U.S.C. § 512(f) and contains legal conclusions and assertions of law to which no response is required, to the extent a response is required to these allegations, Defendant denies.

38. Denied.

39. Denied.

40. Denied. Answering further, Plaintiff is liable to Defendant for Defendant's costs and attorney's fees in accordance with 17 U.S.C. § 512(f).

### GENERAL DENIAL

Each and every allegation of the Complaint not specifically admitted is hereby denied.

### AFFIRMATIVE DEFENSES

1. Plaintiff has failed to state a claim upon which relief can be granted.

2. The claims are barred because Plaintiff has not suffered a compensable injury.

3. The claims are barred on the doctrine of unclean hands.

4. The claims are barred because Defendant received a license to use the Content.

5. The claims are barred to the extent that Plaintiff failed to register a copyright in the subject matter.

6. Lack of scienter.

7. The claims are barred on account of 17 U.S.C. § 205(e) because Defendant's license has priority over Plaintiff's license.

8. Plaintiff's claims fail because the allegedly "Infringing Post" did not contain a copy of the Content.

9. Plaintiff's claims fail on account of the doctrine of laches.

10. Plaintiff's may not be awarded attorney's fees absent a statute authorizing such.

11. Plaintiff is not entitled to statutory damages or attorneys' fees for its copyright infringement claim because Plaintiff failed to register the copyright prior to the alleged infringement, or otherwise failed to register the copyright in a timely manner.

12. To the extent that Plaintiff has suffered any damages, these are offset by the damages Plaintiff caused to Defendant.

**WHEREFORE,** Defendants pray for the following relief:

1. That Plaintiff take nothing by way of its Complaint, that the Complaint be dismissed in its entirety with prejudice and that judgment be rendered in favor of Defendant;

2. That Defendant be awarded its costs, including reasonable attorneys' fees incurred herein as permitted by the 17 U.S.C. § 505;

3. That Defendant be awarded its costs, including reasonable attorneys' fees incurred herein, as permitted by law; and

4. Such other and further relief as this Court deems just and proper.

# COUNTERCLAIMS

Defendant, ADME (CY) LTD, d/b/a TheSoul Publishing ("TheSoul"), now in the capacity of Plaintiff-in-Counterclaim, submits this Counterclaim against Plaintiff/Defendant-in-Counterclaim, SocialCoaster Inc., d/b/a BVIRAL ("BVIRAL"), and Defendant-in-Counterclaim Jonathan Burdon, and states as follows:

1. Defendant and Plaintiff-in-Counterclaim ADME (CY) LTD, d/b/a TheSoul Publishing ("TheSoul") is a Cyprus limited company with registration number HE 347617, with a registered address of Agiou Athanasiou Avenue, 62, BG Waywin Plaza, Floor 1, Office 101, Limassol, 4102, Cyprus.

2. Plaintiff and Defendant-in-Counterclaim, SocialCoaster Inc., d/b/a BVIRAL ("BVIRAL") is a Delaware corporation registered to do business in Tennessee. Upon information and belief, BVIRAL's principal place of business is 605 Holt Run Ct., Nashville, TN 37211.

3. Defendant-in-Counterclaim, Jonathan Burdon, is an individual who resides at 605 Holt Run Ct., Nashville, TN 37211. Upon information and belief, Mr. Burdon is the President, CEO, and guiding spirit of BVIRAL. Upon information and belief, all actions of BVIRAL as alleged herein were taken by, or at the direction of, Mr. Burdon.

## Jurisdiction

4. This Court has jurisdiction under 28 U.S.C. § 1331 to hear TheSoul's copyright related claims.

5. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 to hear TheSoul's related Tennessee state law claims brought herein.

## Introduction

6. TheSoul is an award-winning digital studio that produces original content

entertaining billions worldwide and is one of the world's most prolific and popular online media companies.

7. TheSoul has more than 600 million Facebook followers, more than 1.2 billion YouTube subscribers, more than 70 million Instagram followers, and its content receives more than 25 billion monthly views.

8. TheSoul was recently named "Digital Studio of the Year" at Digiday's 2023 Video & TV Awards, won "Best YouTube Presence" at the 2023 Shorty Awards and was nominated for "Social Media Team of the Year" at The Drum's 2023 Online Media Awards. TheSoul has also received top honors and nominations in the industry from the Webby, Shorty, Telly, Viddy, Streamy, Stevie, and Lovie awards.

9. While TheSoul creates much of its own content, it also licenses a significant amount of its content from third parties.

10. BVIRAL is a media company that owns and licenses viral videos.

11. As described herein, TheSoul and BVIRAL were in negotiations for a potential licensing contract. On the eve of execution of this contract, BVIRAL pulled the deal and then demanded additional concessions from TheSoul. After TheSoul refused these concessions, BVIRAL retaliated against TheSoul and wrongfully pressured TheSoul into entering a new licensing agreement with BVIRAL by defaming TheSoul and tortiously interfering with TheSoul's business with Facebook by sending false DMCA notices, causing significant damages to TheSoul's business. BVIRAL, in its shakedown of TheSoul, only offered to stop this wrongful behavior if TheSoul agreed to BVIRAL's unfair terms in the licensing agreement.

**Contract Negotiations Between the Parties**

12. In or about the late summer to fall of 2023, TheSoul and BVIRAL began to engage

9

Case 3:24-cv-00404     Document 14     Filed 08/04/24     Page 9 of 19 PageID #: 64

in negotiations over a potential licensing contract wherein TheSoul would license content from BVIRAL for TheSoul to publish through its platforms.

13. In about mid-September 2023, TheSoul and BVIRAL had reached a tentative agreement on most, if not all, of the material aspects of a licensing agreement.

14. TheSoul sent the contract containing these negotiated and agreed upon material terms out for signature, but BVIRAL responded weeks later, stating that the agreement was unacceptable and that BVIRAL would now require a different payment structure –making the agreement more lucrative for BVIRAL and more expensive (prohibitively so) for TheSoul.

15. TheSoul and BVIRAL continued to try and negotiate over the new position that BVIRAL developed after the parties agreed to all material terms, but in about late fall 2023, the parties reached an impasse over the pricing on this proposed deal as BVIRAL refused to agree to a reasonable payment arrangement.

### *That's a Nice Publishing Company You've Got There – Would be a Real Shame If Something Were to Happen to It*

16. Starting in about December of 2023, shortly after contract negotiations fell apart between TheSoul and BVIRAL, BVIRAL began submitting false takedown notifications to Facebook, falsely claiming that TheSoul's posts were violating BVIRAL's copyrights.

17. Indeed, from December 2023 through June of 2024, BVIRAL, upon information and belief at the direction of Burdon, sent false, incorrect, and misleading DMCA Notices to Facebook for approximately twelve (12) videos posted on TheSoul's Facebook pages (the "False DMCA Notices").

18. At the time that the False DMCA Notices were sent, upon information and belief, BVIRAL did not hold registered copyrights in <u>any</u> of the complained about works.

19. TheSoul had written non-exclusive licenses to copy and use the content that was

10

the subject of each of the False DMCA Notices.

20. TheSoul received the written non-exclusive license for the content that was the subject of the False DMCA Notices either from the creators themselves, or through a sublicense from a third-party licensing company such as Newsflare, America's Funniest Home Videos, or other similar company.

21. TheSoul informed BVIRAL and/or Burdon that it had written licenses for the works underlying the False DMCA Notices.

22. TheSoul provided BVIRAL and/or Burdon with written licenses it had from the creators of the work underlying the False DMCA Notices.

23. To the extent that TheSoul received a license from a third-party licensing company, that third-party would reach out to BVIRAL, provide evidence of TheSoul's license to BVIRAL and request that BVIRAL retract the False DMCA Notices with Facebook.

24. For several works subject to the False DMCA Notices, once BVIRAL received written evidence from these third-party companies that TheSoul had acquired written licenses for the content at issue, BVIRAL rescinded their respective False DMCA Notices with Facebook.

25. After filing this Complaint, BVIRAL and Burdon completely stopped cooperating with the above-referenced third-party partners and refuse to rescind any DMCA notices, even when informed that such notices are improper.

26. To say the least, BVIRAL and Burdon were not as cooperative when dealing directly with TheSoul. Rather, BVIRAL and Burdon refused to acknowledge the validity of TheSoul's written licenses, and instead, upon information and belief, purposefully disregarded them and damaged TheSoul's business and relationship with Facebook in an attempt to coerce TheSoul into signing a contract advantageous to BVIRAL that had been rejected by TheSoul prior

11

to BVIRAL's tortious conduct.

27. For instance, on or about December 28, 2023, TheSoul received a written non-exclusive license from David Nott with respect to uploading certain content. A copy of this non-exclusive license is attached hereto as **Exhibit 1**.

28. This content from David Nott was uploaded to Facebook on or about January 16, 2024, and BVIRAL issued a DMCA Notice against it on or about January 24, 2024.

29. TheSoul provided evidence of their written nonexclusive license to this content to BVIRAL. Despite receiving evidence of TheSoul's valid license, BVIRAL refused to rescind the False DMCA Notice.

30. A copy of correspondence reflecting the facts in the above paragraph is attached hereto as **Exhibit 2**.

31. TheSoul even offered to pay a $500 payment to BVIRAL to rescind this False DMCA Notice (despite having no obligation to because TheSoul's license was valid in accordance with 17 U.S.C. § 205(e)), but Burdon, on behalf of BVIRAL, refused.

32. A copy of correspondence reflecting the facts in the above paragraph is attached hereto as **Exhibit 3**.

33. On another occasion, on February 22, 2024, TheSoul reached out to Burdon and informed him that BVIRAL had submitted multiple False DMCA Notices with respect to videos which TheSoul had valid licenses.

34. In response to this February 22, 2024, email, Burdon, on behalf of BVIRAL, admitted that at least one of the False DMCA Notes that BVIRAL sent to Facebook was indeed meritless. Correspondence reflecting this is attached hereto as **Exhibit 4**.

35. As can be seen from the correspondence in **Exhibit 4**, Burdon also took this

12

opportunity to again attempt to strong-arm TheSoul into purchasing a licensing package from BVIRAL.

36. The clear implication in this missive was that BVIRAL was trying to run something akin to protection racket scam against TheSoul. *I.e.*, unless TheSoul purchased a license subscription from BVIRAL, BVIRAL would continue to send False DMCA Notices to Facebook, causing Facebook to remove TheSoul's content, demonetizing TheSoul's Facebook pages, and putting a freeze on TheSoul's ability to post new content – all of which is incredibly harmful and damage to TheSoul.

37. In response to this "offer it couldn't refuse," TheSoul, indeed, refused it.

38. In response, BVIRAL continued to send False DMCA Notices to Facebook throughout the winter and spring of 2024.

39. As a last extortionate threat, on May 16, 2024, Burdon, on behalf of BVIRAL, sent an email to TheSoul, informing TheSoul that BVIRAL had just filed a federal copyright infringement lawsuit against it, and offered to settle the lawsuit if TheSoul entered into a licensing agreement (with these same or similar terms favorable to BVIRAL). A copy of this email is attached hereto as **Exhibit 5**.

40. Intent on not negotiating with a demonstrable bad actor, TheSoul ignored Burdon's email.

41. BVIRAL's bad faith continued even after it filed its lawsuit against TheSoul on or about April 8, 2024 – using the lawsuit as cover to exert additional, unfair pressure against TheSoul.

42. For instance, in May 2024, one of TheSoul's partners, Viral Hog, from whom it acquired a license for one of the works under the False DMCA Notices, stated that Burton, on

13

behalf of BVIRAL, stated that it would not be rescinding its False DMCA Notice despite being provided with proof of the falsity of the Notices because BVIRAL had filed suit against TheSoul.

43. Also in about May 2024, another one of TheSoul's other partners, Newsflare, received a similar response from BVIRAL. After Newsflare confirmed to BVIRAL that TheSoul had a valid license to the content underlying the False DMCA Notice, BVIRAL told Newsflare that they would not rescind the False DMCA Notice because BVIRAL had filed the Complaint in this matter.

**TheSoul's Damages**

44. The False DMCA Notices have been and continue to be exceedingly damaging and costly to TheSoul.

45. When DMCA notices are sent to Facebook, Facebook often times responds by "demonetizing" a certain page.

46. Demonetization means that a demonetized page does not receive a split of Facebook's advertising revenue generated on account of users viewing a video or content on a certain Facebook page.

47. For instance, on account of the False DMCA Notices, Facebook demonetized several of TheSoul's Facebook pages for approximately 76 days (in aggregate) by mid-June 2024. This caused TheSoul to lose between approximately $171,000 and $204,000 in revenue that TheSoul would have received but-for False DMCA Notices.

48. Demonetization is not the only form of damages TheSoul suffered on account of BVIRAL's False DMCA Notices. When DMCA notices are sent to Facebook, Facebook, on occasion, blocks TheSoul's Facebook Monetization Tools ("FMT") which means that TheSoul is unable to post content on its Facebook pages for certain amounts of time.

14

49. By sending False DMCA Notices BVIRAL and Burdon knowingly and intentionally cause Facebook to block TheSoul's FMT, thereby restricting user access to TheSoul's Facebook pages, which reduces TheSoul's revenues by approximately $1,100/day..

50. Moreover, upon information and belief, Facebook has a policy that after a certain number of DMCA Notices are sent to a particular page, Facebook will demonetize that page forever.

51. Because of the risk of permanent demonetization, and TheSoul's concern that BVIRAL will continue to send additional False DMCA Notices to Facebook, TheSoul has reduced the amount of content it posts to pages, including its most popular pages, in an effort to reduce the chance that BVIRAL sends additional False DMCA Notices to Facebook causing demonetization to a popular page. This reduction taken in response to BVIRAL's continued False DMCA Notices has reduced TheSoul's revenue, rate of growth and amount of engagement with what could likely be its most popular posts.

## COUNT I
## VIOLATION OF 17 U.S.C. § 512(f)

52. The allegations contained in the foregoing and following paragraphs are hereby restated and incorporated herein by reference as if fully set forth herein.

53. As stated herein, BVIRAL and Burdon's False DMCA Notices wrongfully accused TheSoul of copyright infringement.

54. These allegations of copyright infringing in the False DMCA Notices were false, because as stated herein, TheSoul had written licenses for the content underlying the False DMCA Notices.

55. BVIRAL and Burdon refused to rescind approximately nine of the False DMCA Notices even after being presented with evidence of TheSoul's licenses to use said content.

15

56. Facebook relied on BVIRAL and Burdon's misrepresentations contained in the False DMCA Notices.

57. In reliance on BVIRAL and Burdon's misrepresentations contained in the False DMCA Notices, Facebook removed TheSoul's content for which TheSoul had valid licenses, demonetized TheSoul's pages, and blocked TheSoul's FMT, causing TheSoul damages in the hundreds of thousands of dollars.

58. Upon information and belief, BVIRAL and Burdon's misrepresentations in the False DMCA Notices were made knowingly, and TheSoul is entitled to its costs and attorney's fees.

## COUNT II
## DEFAMATION – LIBEL

59. The allegations contained in the foregoing and following paragraphs are hereby restated and incorporated herein by reference as if fully set forth herein.

60. As stated herein, BVIRAL and Burdon's False DMCA Notices falsely accused TheSoul's of copyright infringement.

61. The False DMCA Notices were made knowingly, and/or with actual malice, and/or with reckless disregard for the truth by BVIRAL and Burdon.

62. The False DMCA Notices were published to a third party, specifically, Facebook.

63. The false statements in the False DMCA Notices caused TheSoul to suffer damages on account of Facebook removing TheSoul's content from Facebook, demonetizing TheSoul's Facebook pages, and blocking TheSoul's FMT on Facebook as described herein.

## COUNT III
## INTENTIONAL INTERFERENCE WITH CONTRACT – TENN. Code ANN. § 47-50-109

64. The allegations contained in the foregoing and following paragraphs are hereby

restated and incorporated herein by reference as if fully set forth herein.

65. At all times relevant to TheSoul's Counterclaims, TheSoul has had legal contracts with third party Meta Platforms, Inc., ("Meta") the company that owns and operates Facebook.

66. In furtherance of these contracts, TheSoul posts videos to Facebook pages, and in consideration for the traffic driven to these pages, Meta pays TheSoul a commission, derived from advertising revenue on account of visits to TheSoul's Facebook pages.

67. BVIRAL and Burdon knew of the existence of these contracts.

68. BVIRAL and Burdon, as discussed herein, caused Meta to breach these contracts (*i.e.* causing Meta to demonetize certain of TheSoul's Facebook pages) by sending the False DMCA Notices to Facebook.

69. BVIRAL and Burdon's inducement of Meta to breach these contracts, was intentional, malicious, and was done through misrepresentation and/or other wrongful means and with a wrongful purpose.

70. TheSoul has been damaged by Defendants' intentional interference with its contracts with Meta, for which BVIRAL and Burdon are liable.

71. BVIRAL and Burdon are liable for treble damages to TheSoul in accordance with Tenn. Code Ann. § 47-50-109 .

## COUNT IV
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS

72. The allegations contained in the foregoing and following paragraphs are hereby restated and incorporated herein by reference as if fully set forth herein.

73. TheSoul has a business relationship with Meta and an expectancy of future business relationship and contracts with Meta.

74. BVIRAL and Burdon knew of the existence of TheSoul's business relationship

with, and expectancy of future business relationships with, Meta.

75. As described herein, by sending the False DMCA Notices to Facebook, BVIRAL and Burdon intentionally and maliciously interfered with TheSoul's business relationship with Meta and expectancy of future relationships with Meta.

76. This interference was improper in both motive and means.

77. TheSoul has been damaged by BVIRAL and Burdon's tortious interference with its business relations and expectancy of future business relationships with Meta, for which BVIRAL and Burdon are liable.

## REQUESTED RELIEF

WHEREFORE, TheSoul prays that this Honorable Court will award the following:

1. Enter judgment in TheSoul's favor on each count of these Counterclaims;

2. Award TheSoul damages as determined at trial, plus attorneys' fees, interest and costs as provided by law;

3. Award TheSoul treble or multiple damages pursuant to Tenn. Code Ann. § 47-50-109 and/or Tenn. Code Ann. § 47-18-109 ;

4. Award TheSoul its costs and attorney's fees in accordance with 17 U.S.C. § 512(f) and/or Tenn. Code Ann. § 47-18-109 ; and

5. Award TheSoul all further relief as this Court deems just.

THESOUL DEMANDS A JURY OF 12 ON ALL COUNTS SO TRIABLE.

Respectfully submitted,

*/s/ S. Chase Fann*
S. Chase Fann (TN BPR No. 36794)
511 Union Street, Suite 1000
Nashville, Tennessee 37219-1778
(615) 238-6300 (Telephone)
(615) 238-6301 (Fax)
cfann@spencerfane.com

And *Pending approval Pro Hac Vice*

Frank Scardino (MA BPR No. 703911)
Valentin Gurvits
825 Beacon Street, Suite 20
Newman, MA 02459
(617) 928-1805 (Frank Scardino)
(617) 928-1804 (Valentin Gurvits)
frank@bostonlawgroup.com
vgurvits@bostonlawgroup.com

*Attorneys for Defendant/Counter-Plaintiff ADME (CY) LTD*

## CERTIFICATE OF SERVICE

I hereby certify that on this the 4th day of August, 2024, a true and exact copy of the foregoing document was filed electronically and notice will be sent to the following through the Court's CM/ECF System:

**Jacob T. Clabo**
**Buchalter, PC**
**1 Music Circle South, Suite 300**
**Nashville, TN 37203**
**Attorney for Plaintiff SocialCoaster, Inc.**
**d/b/a BVIRAL**

*/s/ Chase Fann*
S. Chase Fann

19