IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| SOCIALCOASTER, INC., d/b/a BVIRAL, | ) ) ) | |
| Plaintiff / Counter-Defendant, | ) ) | |
| v. | ) ) | |
| ADME (CY) LTD, d/b/a THESOUL PUBLISHING, | ) ) ) | NO. 3:24-cv-00404 |
| Defendant / Counter-Plaintiff | ) ) | JUDGE CAMPBELL<br>MAGISTRATE JUDGE NEWBERN |
| V. | ) ) | |
| JONATHAN BURDON, | ) ) | |
| Counter-Defendant | ) | |

## AMENDED MEMORANDUM

Pending before the Court is a motion to dismiss counterclaims filed by Plaintiff/Counter-Defendant SocialCoaster, Inc., d/b/a BVIRAL ("BVIRAL") and Counter-Defendant Jonathan Burden. (Doc. No. 19). Defendant/Counter-Plaintiff ADME (CY) Ltd., d/b/a TheSoul Publishing ("TheSoul") filed a response in opposition (Doc. No. 23), and BVIRAL filed a reply (Doc. No. 24).

For the reasons stated herein, the motion to dismiss counterclaims will be **DENIED**.

### I. BACKGROUND

BVIRAL describes itself as a "tech-centric media publisher & entertainment studio." (Compl., Doc. No. 1, ¶ 7). Its business includes acquiring intellectual property rights in online videos and monetizing those videos. (*Id.*). BVIRAL's claims concern its intellectual property rights to an online video entitled "Making Resin Waves," (the "Video"). BVIRAL claims TheSoul violated BVIRAL's rights in the Video and made material misrepresentations concerning its rights

to the Video. BVIRAL brings claims against TheSoul for copyright infringement and violation of the Digital Millenium Copyright Act ("DMCA"), 17 U.S.C. § 512(f). (*See* Compl., Doc. No. 1).

TheSoul is a digital studio that produces original content and licenses content from third parties. (Counterclaim, Doc. No. 14, ¶¶ 6, 9). TheSoul claims BVIRAL submitted false DCMA takedown notifications to Facebook, falsely claiming that TheSoul's posts were violating BVIRAL's copyrights even though BVIRAL did not hold registered copyrights in the works and TheSoul had written non-exclusive licenses to copy and use the content that was the subject of the notices. (*See id.*, ¶¶ 27-35). TheSoul contends BVIRAL and its President and CEO, Jonathan Burden, purposefully disregarded TheSoul's written licenses to damage TheSoul's relationship with Facebook and coerce TheSoul to enter into a licensing agreement with BVIRAL on unfavorable terms. (*Id.*, ¶ 26). TheSoul bring counterclaims against BVIRAL under the DCMA, and under state law for defamation, intentional interference with contract, and tortious interference with business relationships (*see* Counterclaim, Doc. No. 14).

Now before the Court is BVIRAL's motion to dismiss TheSoul's state law counterclaims on grounds that they are preempted by the DMCA. (Doc. No. 19).

## II.     APPLICABLE LAW

**A.     Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint for failure to state a claim upon which relief can be granted. For purposes of a motion to dismiss, a court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual allegations, accepted as true, to state a claim for relief that is plausible on its face. *Id*. at 678. A claim has facial plausibility when the plaintiff pleads facts that allow the court to draw the reasonable inference

2

that the defendant is liable for the misconduct alleged. *Id*. In reviewing a motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff, accepts its allegations as true, and draws all reasonable inferences in favor of the plaintiff. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Thus, dismissal is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Guzman v. U.S. Dep't of Children's Servs.*, 679 F.3d 425, 429 (6th Cir. 2012).

In considering a Rule 12(b)(6) motion, the Court may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case, and exhibits attached to a defendant's motion to dismiss provided they are referred to in the complaint and are central to the claims. *Bassett v. National Collegiate Athletic Assn.*, 528 F.3d 426, 430 (6th Cir. 2008).

**B.     Preemption**

Preemption is an affirmative defense for which the proponent "bears the burden of proof in establishing preemption as grounds for dismissal." *In re Ford Motor Co. F-150 & Ranger Truck Fuel Econ. and Mktg and Sales Prac. Litig.*, 65 F.4th 851, 859 (6th Cir. 2023). State law claims can be preempted "expressly in a federal statute or regulation, or impliedly, where congressional intent to preempt state law is inferred." *Id*. (quoting *McDaniel v. Upsher-Smith Labs., Inc.*, 893 F.3d 941, 944 (6th Cir. 2018)). Neither party has argued express preemption, so Plaintiff's motion will be granted only if implied preemption applies.

"[I]mplied preemption applies in one of two forms: field or conflict." *Id*. (citing *Matthews v. Centrus Energy Corp.*, 15 F. 4th 714, 720 (6th Cir. 2021). "Field preemption occurs 'where the scheme of federal regulation is so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it.'" *Id*. "[W]hen Congress has not entirely displaced state

3

regulation over the matter in question" and a state law actually conflicts with the federal regulation, conflict preemption may apply when it is either impossible to comply with both state and federal law, or where the state law "stands as an obstacle to the accomplishment of the full purposes and objectives of Congress" *Id*. at 859-60 (citing *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 248 (1984)). These two forms of conflict preemption are often referred to as impossibility and obstacle preemption. *See McDaniel*, 893 F.3d at 944.

The parties agree that the Sixth Circuit has not addressed what, if any, preemptive effects the DMCA has on state law claims. But the Sixth Circuit observed that "any case of federal preemption of state law is highly dependent on the facts presented and the claims actually pled by the parties." *Murray Hill Pubs., Inc. v. ABC Comms., Inc.*, 264 F.3d 622, 636 (6th Cir. 2001). At this early pleading stage, the facts and claims are defined by TheSoul's counterclaims, with all reasonable inferences drawn in TheSoul's favor.

The Court begins with the DMCA and the allegedly preempted claims.

**C.      Digital Millenium Copyright Act**

The DMCA was enacted in 1998 "both to preserve copyright enforcement on the internet and to provide immunity to service providers from copyright infringement liability for 'passive,' 'automatic' actions in which a service provider's system engages through a technological process initiated by another without the knowledge of the service provider." *Canvasfish.Com, LLC v. Pixels.Com, LLC*, No. 1:23-cv-611, 2024 WL 885356, at *10 (W.D. Mich. Mar. 1, 2024) (citing *ALS Scan, Inc. v. RemarQ Cmtys., Inc.*, 239 F.3d 619, 625 (4th Cir. 2001)). To take advantage of the "safe harbor" for infringing material, once a service provider becomes aware of infringing content, the service provider must "act expeditiously" to remove or disable access to the material claimed to be infringing. *Id*. (citing 17 U.S.C. § 512(c)(1)).

4

A copyright holder can notify a service provider of infringing material by submitting a "notice of claimed infringement." 17 U.S.C. § 512(c). Once notified, to avoid liability for copyright infringement by virtue of publishing the material on its website, the service provider must disable or remove the material and notify the subscriber that it has removed or disabled access to the allegedly infringing material. 17 U.S.C. § 512(g). If the subscriber believes that the material was removed or disabled as a result of mistake or misidentification, it may so notify the service provider by submitting a "counter notification" under penalty of perjury. *Id*. The service provider must then restore the content unless the original claimant files a copyright infringement lawsuit and notifies Facebook of the legal action. 17 U.S.C. § 512(g)(2)(C).

The DMCA provides a remedy for misrepresentations concerning the notice of claimed infringement and counternotice. 17 U.S.C. § 512(f). It states:

> Any person who knowingly materially misrepresents under this section –
>
> (1) that material or activity is infringing; or
> (2) that material or activity was removed or disabled by mistake or misidentification,
>
> shall be liable for any damages, including costs and attorney' fees, incurred by the alleged infringer, by any copyright owner or copyright owner's authorized licensee, or by a service provider, who is injured by such misrepresentation, as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claims to be infringing, or in replacing the removed material or ceasing to disable access to it.

*Id*.

BVIRAL argues the DCMA misrepresentation provision, which provides a remedy for knowing and material misrepresentations in takedown notices and counter notices preempts state law tort claims based on such misrepresentations because the DMCA remedy for misrepresentation
5

either occupies the field or conflicts with state law claims arising out of misrepresentations in this area.

**D.     The Soul's Counterclaims**

TheSoul asserts counterclaims under state law for defamation, intentional interference with contract, and tortious interference with contract based on BVIRAL's submission of allegedly false takedown notices to Facebook.

Under Tennessee law, intentional interference with contract requires a party to establish that the defendant acted intentionally and with malice to induce the breach of a valid contract of which it was aware.[1] *Robinson v. City of Clarksville*, 673 S.W.3d 556, 574 (Tenn. Ct. App. 2023).

The Tennessee law claim for tortious interference with business relationships also requires elements not part of a claim under the DCMA. These include: that defendant knew of a specific existing business relationship with a third party and engaged in conduct intending to cause of a breach or termination of the business relationship.[2] *Id*. at 573 (citing *Trau-Med of America, Inc. v. Allstate Ins. Co*., 71 S.W.3d 691, 701 (Tenn. 2002)).

Finally, a prima facie claim for defamation requires the plaintiff "to prove that (1) a party published a statement; (2) with knowledge that the statement was false and defaming to the other;

---

[1]     The elements of intentional interference with contract are: "(1) a legal contract existed; (2) the defendants knew the contract existed; (3) the defendants intended to induce a breach of that contract; (4) the defendants acted with malice; (5) the contract was breached; (6) the defendants' actions were the proximate cause of the breach; and (7) the plaintiff suffered damages." *Robinson v. City of Clarksville*, 673 S.W.3d 556, 574 (Tenn. Ct. App. 2023).

[2]     The elements of a claim for tortious interference with business relationships are: "(1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach or termination of the business relationship; (4) the defendant's improper motive or improper means; and finally, (5) damages resulting from the tortious interference." *Robinson*, 673 S.W.3d at 573 (quoting *Trau-Med*, 71 S.W.3d at 701).

or (3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement," and the statement has caused injury to the person's character and reputation. *Davis v. The Tennesseean* 83 S.W.3d 125, 128 (2001).

### III. ANALYSIS

BVIRAL argues the state law counterclaims are preempted because they are based entirely on the allegation that BVIRAL filed false DCMA notices with Facebook, and the DCMA provides a remedy for misrepresentations in the DCMA notices. BVIRAL argues the DMCA preempts state law based on misrepresentations in DCMA notices through conflict and field preemption, but fails to develop how each form of implied preemption applies to TheSoul's state law counterclaims. (*See* BVIRAL Mem., Doc. No. 20). Instead, BVIRAL points to out-of-circuit district court opinions – not appellate court opinions – to argue that some form of implied preemption bars state law claims when the DMCA is in play.[3] (*Id*). BVIRAL suggests in its reply that field preemption applies because "Congress left no room for the states to supplement the remedies provided by the DMCA." (BVIRAL Reply, Doc. No. 24 at 5).

BVIRAL does not explain how either of these variations of conflict preemption bars TheSoul's state law counterclaims, other than to argue that other district courts deciding different cases found preemption. As TheSoul explains in its response, the elements of the various state law claims are distinct from the element of a DCMA claim, and the facts alleged support those different elements. BVIRAL's reply merely reiterates its initial arguments – along with the curious circuit comity argument – and argues that TheSoul applies the "wrong" preemption test because TheSoul

---

[3] In its reply, BVIRAL curiously argues that it would be "error" for this court to reach a conclusion different from another district court's ruling on a different set of facts and claims, all, according to BVIRAL, in the interest of respecting "the majority position of other *circuits* …" (BVIRAL Reply, Doc. No. 24 at 2 (citation omitted) (emphasis added)). Yet, BVIRAL did not provide this Court with any out-of-circuit *appellate* opinions to which this deference is purportedly owed.

7

looked to Copyright rather than DCMA preemption cases. This approach by TheSoul is not particularly surprising given that BVIRAL did not cite any appellate DCMA preemption cases.

TheSoul argues there can be no preemption because the claims require proof beyond that required for a claim under § 512(f) of the DCMA – intentional interference with a contract or a specific business relationship. The Soul argues that that gravamen of these claims is "not the DMCA, *per se*, but rather the counterclaims consist of BVIRAL's and Burdon's attempts to improperly extort and/or punish TheSoul for refusing to agree to an unfair licensing agreement and their attempts to utilize Sham Notices to strongarm TheSoul into signing an unfair licensing agreement by causing Facebook to breach its contracts to TheSoul and damaging TheSoul's business relationship with Facebook." (Doc. No. 23 at 10). TheSoul argues that the mere overlap in some facts does not equate to federal preemption and that, in any event, it is too early in the case to engage in the fact specific inquiry that implied preemption requires.

At this juncture, the Court finds BVIRAL has not carried its burden to show that the state law claims are preempted by the DCMA. BVIRAL is correct that the underlying facts of TheSoul's state law claims include that BVIRAL filed allegedly false DCMA notices with Facebook which has a remedy in the DCMA. But BVIRAL has not established that the regulatory scheme is "so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it." Nor has BVIRAL shown that it is impossible to comply with both state and federal law or that the state tort law "stands as an obstacle to the accomplishment of the full purposes and objectives of Congress" in providing certain limitations on liability relating to online material. *Id*.; *see also* 17 U.S.C. § 512.

Moreover, all of the asserted state law claims include elements beyond the mere falsity of the DCMA notice. Intentional interference with contract requires a contract and malicious intent

8

Case 3:24-cv-00404 Document 32 Filed 10/23/24 Page 8 of 9 PageID #: 181

to induce breach of the contract. *Robinson*, 673 S.W.3d at 574. Tortious interference with business relationships requires intent to cause a breach of a specific existing business relationship. *Id*. Defamation requires a showing of injury to character or reputation and provides for liability if the publisher recklessly disregards the falsity of the statement or negligently fails to ascertain the truth of the statement, whereas the DMCA only provides a remedy "knowing[] material[] misrepresent[ations]." *Davis,* 83 S.W.3d at 128; 17 U.S.C. § 512(f). Given that that state law claims require different elements and serve to protect different interests, the Court is not persuaded that the DCMA remedial provisions for "knowingly materially misrepresents that material or activity is infringing or that material or activity was removed or disabled by mistake or misidentification" preempts state tort law on the asserted counterclaims.

In sum, accepting TheSoul's allegations in support of the counterclaims as true and drawing all reasonable inferences in TheSoul's favor, BVIRAL has failed to carry its burden on the affirmative defense of preemption. While further development of the record may ultimately show that defense to have merit, the Court cannot dismiss TheSoul's state law counterclaims at this juncture based on preemption.

## IV. CONCLUSION

For the reasons stated herein, BVIRAL's Motion to Dismiss (Doc. No. 19) will be **DENIED**. An appropriate Order will enter.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE