IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF TENNESSEE AT
NASHVILLE

| | |
|---|---|
| SOCIAL COASTER, INC., d/b/a BVIRAL, | ) ) ) |
| Plaintiff/Counter-Defendant, | ) ) |
| v. | ) ) |
| ADME (CY) LTD, d/b/a THESOUL PUBLISHING, | ) ) ) |
| Defendant/Counter-Plaintiff, | ) ) |
| v. | ) ) |
| Jonathan Burdon, | ) ) |
| Counter-Defendant. | ) |

Chief Judge William L. Campbell, Jr.

Magistrate Judge Alistair Newbern

Case No.3:24-cv-404

**DEFENDANT/COUNTER-PLAINTIFF ADME (CY) LTD, D/B/A THESOUL PUBLISHING'S MOTION AND MEMORANDUM FOR EXPENSES AND ATTORNEY'S FEES PURSUANT TO FED. R. CIV. P. 37(c)(2)**

*"Well, who are you going to believe, me or your own eyes?"*

Chico Marx, DUCK SOUP (Paramount Pictures 1933).

Ignore our Complaint (where we brought claims premised on infringement of the wrong video), our copyright registration (where we registered the wrong video), the intra-party communications (where we were told we filed suit on the wrong video), our internal correspondence produced in discovery (where we admit we filed suit on the wrong video[1]); our statements in our deposition (where we again admit we filed suit on the wrong video[2]) and most

---

[1] *See* Exhibit 7 attached hereto.
[2] *See* Exhibit 11 attached hereto at pp. 17-21 ln. 16-13; p. 33 ln. 2-22; pp. 43-46 ln. 17-21.

definitely ignore the undisputed facts and law. Ignore all of these, and instead credit only our unsubstantiated and insupportable denial of that which cannot possibly be denied.

This is the position that Plaintiff/Counter-Defendant Socialcoaster, Inc. d/b/a BVIRAL ("BVIRAL") has decided to pursue, urging the Court to believe its attempted legal argument instead of its admittedly erroneous position.

BVIRAL filed the present lawsuit against Defendant/Counter-Plaintiff ADME (CY) Ltd. d/b/a TheSoul Publishing ("TSP") alleging that TSP had infringed on the "Making Resin Waves" video (and no other video). *It is undisputed that TSP never published the Making Resin Waves video*. Internal communications make clear that BVIRAL fully understood that it had brought suit on the wrong video and yet BVIRAL has never (even now) sought to amend its complaint to claim infringement of the correct video (likely because BVIRAL had not even registered its purported copyright in the correct video at the time the present suit was filed).

Despite knowing of its error by November 14, 2024, at the latest, on December 27, 2024, BVIRAL denied TSP's requests for admissions, which asked BVIRAL to admit that TSP never posted the Making Resin Waves video. BVIRAL's false, unsupported (and unsupportable) denials required TSP to incur significant costs and expenses in discovery to prove the requested admissions to be true, entitling TSP to its costs and attorney's fees under Fed. R. Civ. P. 37(c)(2).

On October 22, 2025 at around 10 AM, in accordance with Paragraph G of this Court's Initial Case Management Order, ECF No. 27 PageID # 154, lead counsel for TSP, Attorney Val Gurvits, met in-person with lead counsel for BVIRAL, attorney Jacob Clabo, at attorney Clabo's Nashville office, and made a good faith effort to resolve the dispute referenced herein. Despite this good faith effort, the parties were unable to resolve this dispute. In further support of its motion, TSP states as follows:

**FACTS AND BACKGROUND**

1. BVIRAL filed this lawsuit on April 8, 2024, alleging that TSP violated its Copyright to the "Content" which the Complaint defines as the "Making Resin Waves" video. Complaint at ¶9 (hereinafter the "Content" will be referred to as the "Making Resin Waves" video), the relevant excerpt of the Complaint is attached hereto as Exhibit 1.

2. BVIRAL purports to have acquired the intellectual property rights in the Making Resin Waves video pursuant to an Exclusive Licensing Agreement ("ELA") dated September 26, 2019 with its creator, Ann Upton. Complaint at ¶10. A copy of the ELA is attached hereto as Exhibit 2.

3. TSP promptly informed BVIRAL that it never published the Making Resin Waves video by clearly explaining this in its answer and affirmative defenses filed on August 4, 2024. *See* Answer ¶¶18, 20-21, 26, 31 Affirmative Defense No. 8 (ECF. No. 14, PageID #s 58-60, 62), and Memorandum in Support of its Motion for Preliminary Injunction (ECF. No. 39 at PageID #s 235-236, 246-247) (the "PI Memo") filed on November 13, 2024. Relevant excerpts are attached hereto as Exhibit 3.

4. In BVIRAL's initial disclosures on October 17, 2024, BVIRAL doubled down and once again confirmed that was suing TSP for infringement of the Making Resin Waves video. *See* Initial Disclosures at p. 3, a copy of which is attached hereto as Exhibit 4.

5. As a part of BVIRAL's initial disclosures on October 17, 2024, BVIRAL provided a copy of the Copyright Registration of the Making Resin Waves video, Registration No. PA 2-465-586. A copy of this registration is attached hereto as Exhibit 5.

6. As a part of TSP's initial disclosures on October 17, 2024, TSP produced a copy of

the Making Resin Waves video to BVIRAL with bates number TSP 000112. Scardino Decl. at ¶4. TSP obtained this copy of the Marking Resin Waves video from the United States Copyright Office, the cover letter accompanying a flash drive of the Making Resin Waves Video that TSP's counsel received from the Copyright Office is attached hereto as Exhibit 6. TSP also provided a copy of the Making Resin Waves video to this Court in a Thumb Drive as a part of TSP's PI Memo. ECF. Nos. 40-33, 43.

7. On November 14, 2024, the day after TSP filed its PI Memo which included a lengthy explanation that TSP never published the Making Resin Waves video and that BVIRAL's complaint referenced the wrong video, BVIRAL acknowledged its error in writing, as shown in the following exchange provided in discovery by BVIRAL between Jonathan Burdon and Christian Tobon:

> "I know that we registered a ann upton video with the library of confress, [sic] please confirm it is this one, I am unsure but the soul publishing is claiming we did not register the correct ann upton video – which is not required to enforce our rights, but I do want to make sure as an extra precaution we get this one registered as well as they are claiming it was this video" [the email then contains still shots of the "Stunning Art" video]. Mr. Tobon responded: "***The video registered is not that one*** [emphasis added]. I will make sure the second video gets registered."

A copy of this correspondence is attached hereto as Exhibit 7.

8. That same day, November 14, 2024, BVIRAL registered a copyright in the video entitled "Stunning Art" Copyright Registration No. PA 2-510-660. A copy of the Stunning Art video copyright registration is attached hereto as Exhibit 8.

9. On November 27, 2024, TSP served requests for admission on BVIRAL (the "RFAs"). The RFAs are attached hereto as Exhibit 9.[3] RFAs 1 and 2 read as follows:

---

[3] TSP's Requests served on BVIRAL were part of the same document that TSP served its Interrogatories and Request for the Production of Documents. Only the relevant part of the Requests (*i.e.* the instructions and the Requests themselves) are provided in this exhibit.

(1) "Admit that the Content [the Making Resin Waves video] is the same video that was produced as TSP 000112 in TheSoul's Initial Disclosures" and

(2) "Admit that TheSoul did not display or post the Content [the Making Resin Waves video] on any of its Facebook pages."

10. On December 27, 2024, BVIRAL denied RFAs 1 and 2 (the "Denials"). The Denials are attached hereto as Exhibit 10.

11. Because BVIRAL denied these RFAs, TSP was forced to engage in extensive and expensive discovery on this issue, which was necessary because BVIRAL's Complaint rests on the allegation that TSP *specifically* infringed on the Making Resin Waves video.

12. As TSP's discovery efforts discussed below confirmed, as of the December 27, 2024 date of BVIRAL's Denials, there could be no good faith mistake as to the fact that (a) the Complaint referenced the Making Resin Waves video and no other video and (b) that BVIRAL had no record of TSP's infringement of the Making Resin Waves video.

13. TSP deposed BVIRAL and Burdon on August 12, 2025 (the "Deposition", relevant excerpts are attached hereto as Exhibit 11.)

14. In the Deposition, Burdon and BVIRAL admitted that Making Resin Waves was the same video that TSP provided in discovery as TSP 000112.[4] Depo. at pp. 11-19 ln. 11-16. Therefore, Burdon and BVIRAL admitted that the assertion in RFA No. 1, was, in fact, true.

15. Moreover, in the Deposition, BVIRAL and Burdon also admitted that they have no evidence that TSP ever published the Making Resin Waves video to TSP's Facebook pages (or any other location for that matter). Deposition at p. 33 ln. 2-22. Specifically, BVIRAL and Burdon

---

[4] In the Deposition, TSP's counsel showed BVIRAL and Burdon the "Making Resin Waves" video, marked as Exhibit 3 in the Deposition, which was the same video that was produced as TSP 000112 in TSP's initial disclosures. Scardino Decl. at ¶6.

testified as follows:

> Q. Does BVIRAL have any evidence that TheSoul ever published the video that we refer to as "Making Resin Waves," the one that's licensed under the September 26th license agreement?
>
> **A.** No. …
>
> Q. Okay. So just to make sure that I understand, BVIRAL does not claim that TheSoul infringed the "Making Resin Waves" video that was licensed by BVIRAL no September 26th; correct?
>
> A. BVIRAL - - that's correct. BVIRAL claims that you – that TheSoul infringed on the October 9, 2019 video [the "Stunning Art" video].
>
> Q. And that's the only video it claims that it infringed; right?
>
> A. In respect to this specific complaint, yes.

16. BVIRAL and Burdon also admitted that they realized the Complaint referenced the wrong video on November 14, 2024, the day after seeing TSP's PI Memo, and then registered a copyright in the Stunning Art video. Deposition at pp. 43-46 ln. 17-21. Specifically, BVIRAL and Burdon testified as follows:

> Q. Just as a matter of -- let me upload another document. Okay. This one is called number four, "November 14th Jonathan and Christian Tobon Exchange Regarding Wrong Video."(Exhibit No. 9, Exchange Regarding Wrong Video; so marked.)
>
> A. Yes, I've got it.
>
> Q. Okay. Thank you. I will represent to you that this is a document that BVIRAL provided to us as part of our -- in response to our document production request. One question, who is Christian Tobon?
>
> **A.** Christian is an individual in our team who manages some of our channels, but he also registers clips for us with the Library of Congress.
>
> …
> Q. And so as a result of this exchange, did BVIRAL end up registering the second video with the copyright office?
>
> **A.** Yes. BVIRAL has registered two Ann Upton clips with the Library of Congress.

> Q. Right. The second one was registered after November 14, 2024?
>
> **A.** The second video was registered after November 14th –
>
> Q. Okay.
>
> **A.** -- and that certificate is also provided as well in our discovery.
> …
>
> Q. The certificate of registration dated 3/29/24 for "Making Resin Waves," that's the one that is covered by the September 26th license from Ann Upton; is that correct?
>
> **A.** Yes. That registration's related to the clerical error that we had on the September license. We had ten days after TheSoul filed counter-notice to file litigation in order to prevent our content from continuing to be exploited. At that point we had to get the clip registered. The one that was a misidentification was that one.
>
> Q. Right. But just to make sure that I understand it correctly, the certificate of registration dated 3/29/24 is for the work that is covered by the September 26th license; correct?
>
> **A.** Yes, I believe that's correct.
>
> Q. Okay. And then the certificate of registration dated November 15, '24 is the one that is covered by the September -- by the October 9th license -- the October 9th license from Ann Upton; correct?
>
> **A.** Yeah. From the 2019 Ann Upton clip.

17. Indeed, BVIRAL explicitly admits that they incorrectly filed their lawsuit against the Making Resin Waves video instead of the Stunning Art video, and that the Stunning Art video is not referenced in the Complaint. Depo. pp. 17-21 ln. 16-13. Specifically, BVIRAL and Burdon testified as follows:

> Q. Yeah. I mean, I'm not trying to catch you on anything. That's just how the complaint is. It defines content as "Making Resin Waves," whatever that video is, as content. And then Section 10 says that, "BVIRAL acquired the intellectual property rights and the content pursuant to an exclusive license agreement dated September 26, 2019 with Ann Upton as the creator." Did I read that correctly?
>
> **A.** Yes, you read that correctly.

Q. Okay. So in this complaint, the reference to "Making Resin Waves" is that it's pursuant to a September 26th agreement. And then if I look at Exhibit A, let's turn over to Exhibit A, let me know when you're there –

**A.** I'm there.

Q. -- you see that this is an exclusive license agreement; right?

**A.** This is one of our many Ann Upton exclusive licenses.

Q. But it's the one attached to this complaint; correct?

**A.** Yes. This was the one that was confused and attached to this complaint.

Q. Okay. And are you testifying that it was a mistake to attach this one to this complaint?

**A.** Yes. Due to many videos from Ann Upton with similar names and dates, it was mistakenly attached, but we have held the correct license, the one in which TheSoul has infringed on for the entirety of the case.

Q. Yeah. Sorry. I didn't mean to speak over you, but I agree with you that there is -- I've seen that document so I do understand that, but I'm talking about this one right now. This document, this exclusive license agreement, has Exhibit A of its own, and if we turn to that, if you could please turn to Exhibit A of the exclusive license agreement and let me know when you're there?

**A.** I'm there.

Q. Okay. It says that it's, "An Exhibit A to the agreement between Ann Upton as the licensor and BVIRAL as the licensee dated as of September 26, 2019." Did I read that correctly?

**A.** Yes.

Q. And it is referencing as the license material a video called "Making Resin Waves"; correct?

**A.** Yes. This is one of the Ann Upton clips.

Q. Okay. And is it your testimony that the license material referenced in Exhibit A as "Making Resin Waves" was a mistake in this complaint, administrative mistake; did I understand that correctly?

**A.** Yes. I would say that it's a clerical error, yes. …

18. Therefore, BVIRAL and Burdon admitted that they wrongfully denied TSP's RFA No. 2 which asked BVIRAL to admit that "TheSoul did not display or post the Content [the Making Resin Waves video] on any of its Facebook pages."

19. Despite knowing that the Complaint alleged infringement of the Making Resin Waves video and that TSP did not infringe this video, BVIRAL never dropped its copyright infringement claim (Count I) and TSP was forced to incur significant legal expenses in drafting and filing its motion for summary judgment that is now pending before the Court. *See,* ECF Nos. 75-78. TSP will also have to expend resources defending against BVIRAL's pending motion for summary judgment where BVIRAL (in an inexplicable and unethical effort) is moving for summary judgment claiming that TSP infringed the Stunning Art video – a video that is not referenced in the Complaint at all, and which was not even registered with the US Copyright Office at the time of the filing of the Complaint. Therefore, TSP is entitled to its costs and attorney's fees incurred in proving the Requests to be true.

## LEGAL STANDARD

Fed. R. Civ. P. 37(c)(2) states as follows:

> *Failure to Admit.* If a party fails to admit what is requested under Rule 36 and if the requesting party later proves a document to be genuine or the matter true, the requesting party may move that the party who failed to admit pay the reasonable expenses, including attorney's fees, incurred in making that proof. **The court must so order** unless:
> (A) the request was held objectionable under Rule 36(a) ;
> (B) the admission sought was of no substantial importance;
> (C) the party failing to admit had a reasonable ground to believe that it might prevail on the matter; or
> (D) there was other good reason for the failure to admit.

(Emphasis added). The award of attorney's fees and expenses prescribed in Fed. R. Civ. P. 37(c)(2) is non-discretionary, so long as the nonmoving party fails to show that its wrongful denial falls into any of the safe-harbors listed in (A)-(D) above. *See McCarthy v. Ameritech Pub., Inc.,*

763 F.3d 488, 492 (6th Cir. 2014)("When a litigant expends resources to prove a fact that an opposing party refused to admit, Rule 37(c)(2) directs (and does not just permit) the court to award monetary sanctions equal to 'the reasonable expenses, including attorney's fees, incurred in making that proof.'") There is also no requirement that "proving" that a matter is true must be done by a fact-finder's adjudication, rather evidence collected during discovery is sufficient to "prove" that the matter subject to a request for admission was wrongfully denied. *See id.* at 489 (awarding attorney's fees under Fed. R. Civ. P. 37(c)(2) when a party turned over an email establishing that one of facts that party denied was actually true); *Robert M. Block, D.D.S., v. Meharry Med. Coll.*, No. 3:15-CV-0204, 2016 WL 5724236, at *3 (M.D. Tenn. Sept. 30, 2016)(Granting a Fed. R. Civ. P. 37(c)(2) motion based on evidence acquired during a deposition).[5]

Even if a party later admits a wrongfully denied fact, the moving party is entitled to its attorney's fees and costs incurred in the interim. *See McCarthy v. Ameritech Pub., Inc.*, 763 F.3d 488, 491 (6th Cir. 2014)("But nothing in the language of the rule prevents a party from obtaining sanctions when an opposing party initially refuses to admit a fact but later concedes its truth. *See Johnson Int'l Co. v. Jackson Nat'l Life Ins. Co.*, 812 F. Supp. 966, 988 (D.Neb.1993) ('While a party may reduce its exposure for fees and expenses by making an appropriate concession in the pretrial order, such a concession will not provide the party with a safe harbor for the prior ill-advised denial where the adverse party has spent time and money to prove the fact denied.')" A moving party is also entitled to their attorney's fees and expenses incurred in preparing and presenting its fee application to the Court under Fed. R. Civ. P. 37(c)(2). *McCarthy v. Ameritech*

---

[5] To the extent that this Court believes a factfinder needs to ascertain that the Denials are proved to be false prior to deciding a Rule 37(c)(2) motion, TSP requests that the Court reserve judgment on this Motion until disposition of TSP's pending motion for summary judgment, ECF Nos. 75-78. The undisputed facts asserted therein are sufficient to prove that the Denials were wrongful.

10
Case 3:24-cv-00404 Document 81 Filed 10/31/25 Page 10 of 14 PageID #: 1882

*Pub., Inc.*, 763 F.3d 488, 493-94 (6th Cir. 2014).

### BVIRAL Improperly and Wrongfully Denied RFAs Nos. 1 & 2 Which TSP Proved Through Discovery

As described herein, TSP has repeatedly informed BVIRAL that it had never posted the Making Resin Wave video. BVIRAL acknowledged that it made a mistake by filing a lawsuit against the Making Resin Waves video and by not registering a copyright in the Stunning Art video until more than seven (7) months after the Complaint was filed, on November 14, 2024. Despite this fact, more than a month after BVIRAL realized its mistake, on December 27, 2024, BVIRAL wrongfully denied RFAs Nos. 1 and 2. BVIRAL has not corrected its wrongful denial as of the date hereof. There is no excuse for this wrongful denial and TSP is entitled to its costs and attorney's fees in accordance with Fed. R. Civ. P. 37(c)(2).

### None of the Safe Harbors Enumerated in Fed. R. Civ. P 37(c)(2)(A-D) Apply

Fed. R. Civ. P. 37(c)(2) is clear that a Court *must* award a moving party its expenses and attorney's fees unless (A) the request was held objectionable under Rule 36(a); (B) the admission sought was of no substantial importance; (C) the party failing to admit had a reasonable ground to believe that it might prevail on the matter; or (D) there was other good reason for the failure to admit. Fed. R. Civ. P. 37(c)(2)(A)-(D).

BVIRAL did not make any objections specific to RFAs Nos. 1 or 2. Rather, BVIRAL listed eight (8) "general objections," but none of these apply specifically to Requests Nos. 1 or 2. Therefore, BVIRAL did not make any valid objection to RFAs Nos. 1 or 2 and safe harbor (A) does not apply. As for (B), the Requests were clearly of very substantial importance. Indeed, RFA No. 1 asks for BVIRAL to confirm that a certain video produced in discovery was indeed the video upon which BVIRAL's Complaint was based. This is obviously highly relevant and central to the claims at issue. RFA No. 2, which asked BVIRAL to admit that TSP did not ever post the video

on which BVIRAL based its Complaint could obviously not be more central to TSP's defense of the Complaint (and also important to TSP's Counterclaims). Indeed, if BVIRAL had admitted to Request No. 2 as it was obligated to, it would effectively demolish BVIRAL's Complaint against TSP. It would entitle TSP to summary judgment on all causes of action brought against it and would also require BVIRAL, pursuant to its ethical obligations, to dismiss this claim which is admittedly baseless.

Obviously, safe harbor (C) does not apply since this is not the type of fact that BVIRAL could possibly believe it could later prove to be otherwise, but rather it is a discrete and clear fact that BVIRAL should have known when it filed the Complaint. Indeed, as referenced in Exhibit 7 hereto, it took BVIRAL less than forty (40) minutes of investigation to determine that it filed the Complaint under the wrong video. Finally, safe harbor (D) does not apply because BVIRAL has no good reason for the failure to admit, because at the time that they served their Response, they were well aware that TSP never posted the Making Resin Waves on TSP's Facebook pages and knew that TSP 000112 was the Making Resin Waves video. Indeed, to the extent that BVIRAL contends that there was an honest mistake, the evidence shows that, at the latest, BVIRAL was aware of this mistake on November 14, 2024 (well before the RFAs were even served) when it admits in internal correspondence that it made an error.

Counsel certifies that, pursuant to Local Rule 7.01 and the governing Case Management Order, lead counsel for the parties met via phone call, engaged in subsequent correspondence of legal authorities and analysis, and then an in-person meet and confer before the filing of this Motion.

12
Case 3:24-cv-00404   Document 81   Filed 10/31/25   Page 12 of 14 PageID #: 1884

## CONCLUSION

For the reasons stated herein, TSP moves this Honorable Court to grant this motion and allow TSP to file a subsequent motion with its bills and records to support its claim for attorney's fees and costs.

Respectfully Submitted on this the 31st day of October, 2025:

/s/ Frank Scardino
Valentin Gurvits (MA Bar No. 643572)
Frank Scardino (MA Bar No. 703911)
Boston Law Group, PC
825 Beacon Street, Suite 20
Newton, MA 02459
Telephone: 617-928-1804
vgurvits@bostonlawgroup.com
frank@bostonlawgroup.com
*Admitted pro hac vice*

and

/s/ S. Chase Fann
S. Chase Fann (TN Bar No. 036794)
Spencer Fane LLP
511 Union Street, Suite 1000
Nashville, TN 37219
Telephone: 615-238-6300
Facsimile: 615-238-6301
cfann@spencerfane.com
*Attorneys for Defendant/Counter-Plaintiff ADME (CY) LTD, d/b/a TheSoul Publishing*

**CERTIFICATE OF SERVICE**

       I hereby certify that the foregoing was served via the Court's ECF system on October 31, 2025 to the following:

Jacob T. Clabo
Jay Scott Bowen
Lauren M. Spahn
Lucas A. Davidson
Buchalter, PC
1 Music Circle South, Suite 300
Nashville, Tennessee 37203
jclabo@buchalter.com
jbowen@buchalter.com
lspahn@buchalter.com
ldavidson@buchalter.com
*Attorneys for Plaintiff/Counter-Defendant*

By:    */s/ Frank Scardino*