# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### AT NASHVILLE

| | | |
|---|---|---|
| SOCIALCOASTER, INC., d/b/a | ) | |
| BVIRAL | ) | Case No. 3:24-cv-00404 |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | |
| | ) | Chief Judge William L. Campbell, Jr. |
| v. | ) | |
| | ) | Magistrate Judge Alistair Newern |
| ADME (CY) LTD, d/b/a | ) | |
| THESOUL PUBLISHING, | ) | |
| | ) | JURY TRIAL DEMANDED |
| Defendant/Counter-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JONATHAN BURDON, | ) | |
| | ) | |
| Counter-Defendant. | ) | |

---

**BVIRAL AND BURDON'S RESPONSE IN OPPOSITION TO ADME (CY) LTD d/b/a THESOUL PUBLISHING'S MOTION FOR SUMMARY JUDGMENT**

---

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Plaintiff/Counter-Defendant SocialCoaster, Inc., d/b/a BVIRAL ("BVIRAL") and Counter-Defendant Jonathan Burdon ("Burdon") respectfully submit this response in opposition to the Defendant/Counter-Plaintiff AdMe (CY) LTD, d/b/a TheSoul Publishing's ("TSP") Motion for Summary Judgment (the "Motion"). As set forth herein, and in BVIRAL and Burdon's own Motion for Summary Judgment, there is no genuine dispute of material fact with respect to what transpired between the parties. However, TSP's Motion should be denied because BVIRAL and Burdon are entitled to judgment as a matter of law on all outstanding matters between the parties. In support of this Response, BVIRAL and Burdon state as follows:

## INTRODUCTION

TSP's brief is long on invective, but it falls well short on the law and, more importantly, on setting out the specific, undisputed, facts which would lead no reasonable jury to find for BVIRAL and Burdon. The record is undisputed that TSP has repeatedly infringed on BVIRAL's exclusive rights in a number of videos in BVIRAL's catalog. BVIRAL—consistent with its rights under the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512—issued notices of infringement (the "DMCA Notices of Infringement") to Meta seeking the removal or takedown of these infringing works. When TSP issued a counter-notice with respect to one of these videos under 17 U.S.C. § 512(g)—knowing that it did not have clear rights and title to the video at issue—BVIRAL initiated this action, seeking clarity and relief from this Court, solely with respect to this one video.

Rather than admit to its liability or otherwise commit to ceasing its repeated infringing conduct, TSP has turned this litigation on its head: asserting and maintaining legal positions and causes of action which are not supported by the facts or the law. In an act of quintessential

2

"gotcha" litigation, TSP now appears to seek sanctions regarding an insignificant error with an attachment to BVIRAL's original Complaint, despite the fact that it opposed BVIRAL's previous request to amend that pleading that would have cured this defect. TSP has entrenched itself in this litigation with a clear focus—to be as punitive as possible to deter BVIRAL's efforts to enforce its exclusive rights in its content and in its catalog.

TSP's meritless, contemplated sanctions motion serves a secondary purpose—it distracts from the otherwise straightforward analysis at summary judgment. There is no genuine dispute of material fact that TSP has infringed on the video at issue between the parties. The foregoing notwithstanding, BVIRAL acknowledges that there is no practical upside to pursuing its affirmative infringement claim against TSP, particularly in light of TSP's apparent desire to continue down the path of unnecessary and costly motion practice.

For that reason—and despite having a clear and undisputed factual record of infringement by TSP—BVIRAL has dropped its pursuit of this claim. In addition to the Notice filed by BVIRAL with respect to the same, BVIRAL also submits contemporaneously herewith a motion to amend its Complaint to: (1) remove its infringement claim, and (2) to correct the attached license and references to the same.[1]

Nothing in these filings detracts from the remaining issues before the Court. There is no genuine dispute of material fact that TSP knowingly misrepresented material facts on a DMCA counter-notice in violation of 17 U.S.C. § 512(f). There is also no genuine dispute of material fact

---

[1] To the extent that TSP asserts that it is entitled to attorneys' fees and costs with respect to this claim, that is an issue for further briefing. (*See* D.E. 73-1, p. 25 n. 11) (citing *Doe v. Rausch*, 659 F. Supp. 895, 901-02 (M.D. Tenn. 2023) (Campbell, J.) (ordering supplemental briefing on, *inter alia*, the issues of attorneys' fees). This is particularly true given the discretionary nature of fees awardable under 17 U.S.C. § 505, BVIRAL's claim for fees in connection with defending against TSP's state law claims, (*see id.* pp. 25-26), and the remaining issues present in this litigation that would militate against an award of fees to TSP.

that TSP cannot satisfy each and every element of its state law counterclaims—counterclaims which are almost certainly barred by either the Tennessee Public Participation Act ("TPPA") and/or preempted by the DMCA.

For each of these reasons, TSP cannot satisfy the stringent standard applicable to summary judgment motions, and its Motion should be denied.

## FACTUAL BACKGROUND

A brief review of the separate fact statements submitted by BVIRAL and Burdon, on one hand, and TSP, on the other, evidences the lack of true genuine disputes between the parties. Generally, there are no disputes of fact as to the existence of negotiations between the parties, merely a dispute as to how close the parties were to reaching an ultimate agreement (*See* Plfs.' Resp. to TSP's Statement of Undisputed Material Facts ("Resp. SUMF") ¶¶ 2-5). There is no genuine dispute of material fact that BVIRAL provided TSP with access to and the ability to search its catalog in connection with these negotiations. (*See id.* ¶ 43). There is also no genuine dispute of material fact that BVIRAL received exclusive licenses from Ann Upton and the other creators at issue in this litigation, TSP just asserts—for the first time at the summary judgment phase—that such licenses are unenforceable. (*See id.* ¶¶ 15, 19, 82). There is no genuine dispute of material fact that TSP posted the videos which were the subject of BVIRAL's exclusive licenses. (*See, e.g.*, *id.* ¶¶ 8, 52, 58, 63, 67). There is no genuine dispute of material fact that BVIRAL issued Notices of Infringement under the DMCA when it learned of acts by TSP it considered to be infringing with respect to the videos in which it had received an exclusive grant of rights. (*See, e.g., id.*). And there is no genuine dispute of material fact that TSP issued, in just one instance, a counter-notice under the DMCA, nor is there a genuine dispute of material fact regarding the substance of that counter-notice. (*See* BVIRAL's SUMF ¶¶ 67-73).

4

In light of the foregoing undisputed facts, TSP has alleged sixteen instances of "sham DMCA" takedowns that were issued by BVIRAL. (*See id.* ¶ 75). In its deposition, TSP confirmed that these DMCA Notices of Infringement, issued by BVIRAL, were the sole basis for its counterclaims in this litigation. (*See id.* ¶ 76). As set forth in BVIRAL's Motion for Summary Judgment, in almost every one of these videos, BVIRAL, at all times relevant to this litigation, had the actual exclusive right and interest in the videos that were subject to the takedown. (*See id.* ¶¶ 56-74, 77-151, 192-210). For the few scenarios where BVIRAL ultimately was unsure of the priority of its grant of rights, and in the only scenario where BVIRAL was affirmatively proven wrong with respect to its right to issue such a notice BVIRAL immediately withdrew its DMCA Notice of Infringement, indisputably within hours of issuing such notice. (*See id.* ¶¶ 157-59).[2]

There are no facts in the record to support the scienter requirements of TSP's counterclaims—namely that BVIRAL and Burdon acted with knowledge with respect to any material misrepresentations made in the DMCA Notices of Infringement as required by TSP's 17 U.S.C. § 512(f) claim; that BVIRAL and Burdon acted with malice, as is required by TSP's defamation and intentional interference with contract claim; and that BVIRAL and Burdon acted with improper motive or improper means, as required by TSP's tortious interference claim. Nor are there undisputed facts in the record to support TSP's assertion that Burdon and BVIRAL were "willfully blind" in issuing the DMCA Notices of Infringement at issue in this litigation.

Instead, the record shows that, after an intensive and thorough due diligence process, BVIRAL licenses content on an exclusive basis, (*see, e.g.*, *id.* ¶ 30), and it requires the licensors in those agreements to represent and warrant, among other things, that the original owner had the

---

[2] There is also no genuine dispute that, in this singular instance, BVIRAL issued such takedown at the express request of the content creator and owner of the video which was employing BVIRAL to provide administrative services with respect to the video in question. (*See id.* ¶ 154).

power to grant the rights in question, that the owner was the sole and exclusive owner of the worldwide rights in the work at issue, and that the owner had not previously entered into licenses with respect to the videos or otherwise has "done one or permitted to be done anything which may curtail or impair any of the rights granted" to BVIRAL under the ELA. (*See id.* ¶¶ 58, 78, 90, 100, 110, 120, 131, 143, 161, 178, 193, and 202).

These facts, alone, are sufficient for the disposition of the remaining issues in this case. Everything else—the bulk of TSP's arguments and its unremitting motion practice—is noise.

## LEGAL STANDARD

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *EJ Footwear, LLC v. Excellus Health Plan, Inc.*, 2006 WL 2265463, at *3 (M.D. Tenn. Aug. 8, 2006) (Trauger, J.) (citing Fed. R. Civ. P. 56(c)). A "party moving for summary judgment always bears the burden of demonstrating the absence of a genuine issue as to a material fact." *Carver v. Bunch*, 946 F.2d 451, 454 (6th Cir. 1991). Moreover, "[t]he evidence must be viewed in a light most favorable to the party opposing the motion, giving that party the benefit of all reasonable inferences." *Smith Wholesale Co., Inc. v. R.J. Reynolds Tobacco Co.*, 477 F.3d 854, 861 (6th Cir. 2007).

## ARGUMENT

Summary judgment is proper in this case. There is no genuine dispute of material fact as to the remaining claims pending between the parties. However, TSP's Motion must be denied because it is not entitled to judgment as a matter of law on these claims.

6

## I. BVIRAL's 17 U.S.C. § 512(f) Claim.

TSP is not entitled to judgment as a matter of law on BVIRAL's affirmative claim for material misrepresentation under 17 U.S.C. § 512(f). Section 512(f) provides that "[a]ny person who knowingly materially misrepresents ... that material or activity is infringing ... shall be liable for any damages ... incurred by the alleged infringer ... who is injured by such misrepresentation, as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing." As noted by BVIRAL in its Motion for Summary Judgment, a cause of action under Section 512(f) requires knowledge <u>at the time the notice or counter-notice was issued</u>. *See Moonbug Entertainment, Ltd. v. Babybus (Fujian) Network Co., Ltd.*, 2022 WL 580788, at *7 (N.D. Cal. Feb. 25, 2022) (holding that "a copyright owner 'cannot be liable simply because an unknowing mistake is made, even if the copyright owner acted unreasonably in making the mistake.'") (quoting *Rossi v. Motion Picture Ass'n of Am. Inc.*, 391 F.3d 1000, 1004-05 (9th Cir. 2004). As a result, to prevail on its Section 512(f) claim under the DMCA, BVIRAL must show: (1) a material misrepresentation in a takedown counter-notice, and (2) that the counter-notice was submitted in subjective bad faith. *See Ningbo Mizhihe I&E Co. v. Does 1-200*, 2020 WL 2086216, at *3 (S.D.N.Y. Apr. 30, 2020).

In this case, TSP alleges that it is entitled to judgment as a matter of law with respect to this claim because: (1) it purportedly "had a good faith belief in [its] Counternotification", (2) it has an erroneous interpretation of 17 U.S.C. § 512(f), and (3) BVIRAL's licenses are purportedly invalid for lack of consideration—an argument not present in TSP's pleadings and which has been presented for the first time in connection with an amendment sought during the pendency of the parties' summary judgment briefing. (*See* Mot., p. 1). Each of these arguments fails.

First, there is no genuine dispute of material fact that TSP had no good faith basis for asserting its counternotification. At the time BVIRAL issued its DMCA Notice of Infringement—and at the time TSP issued its counter-notice—BVIRAL held an exclusive license for the Upton Video from Ann Upton, pursuant to an Exclusive License Agreement (an "ELA"), dated October 9, 2019. (BVIRAL's SUMF ¶ 58). While TSP makes efforts to dispute the enforceability of this agreement, there is no genuine dispute of material fact that the agreement, enforceable or not, was in place at this time. (*See* Resp. SUMF ¶ 23) (undisputed that "BVIRAL claims to have an exclusive license to the Stunning Art video from Ann Upton in accordance with an ELA dated October 9, 2019"). There is also no dispute that TSP purports to obtain rights based on a later-in-time direct message exchange with Upton. (*See id.* ¶¶ 6-7). Also not in dispute is the fact that, prior to this exchange with Upton, TSP had been provided access to and direction on how to search BVIRAL's database of exclusive works. (*See* BVIRAL's SUMF ¶ 38). As discussed below, at a minimum, TSP had inquiry notice as a result of the foregoing such that summary judgment is improper in favor of TSP with respect to this claim. (*See infra* Arg. II.A.4). More condemning, however, is the fact that TSP's corporate representative testified that, at the time of TSP issuing its counter-notice, TSP did not know what rights it did or did not have with respect to the Upton Video that was the subject of this dispute. (*See* BVIRAL's SUMF ¶¶ 70-71). For each of these reasons, there was no "good faith belief" by TSP in its counter-notice.

Second, TSP contends that, because Facebook did not ultimately restore the video at issue as a result of its materially misrepresenting counter-notification, BVIRAL cannot prevail on its Section 512(f) claim. This position misstates the law. The DMCA makes clear that, unless BVIRAL initiated this action within 10-14 days of receiving the Counternotification, then Meta would restore the video at issue. *See* 17 U.S.C. § 512(g)(2)(C). Under TSP's interpretation of the

8

DMCA, BVIRAL would be incentivized—instead of timely filing an action in response to a materially misrepresenting counternotification, to do nothing. In such a case, the alleged infringer's post would be reactivated, and, only then, could BVIRAL pursue an action against TSP. Under this interpretation of the DMCA, BVIRAL could game the system and increase its damages by taking no action in response to a materially misrepresenting counternotification. This is contrary to the purpose of the DMCA to give expeditious removal of infringements while preserving legitimate uses and giving subscribers a way to contest over-removals. *See* S. Rep. No. 105-190, at 21-25; H.R. Rep. No. 105-551, pt. 2, at 49-55 (1998). Moreover, TSP's asserted interpretation of the DMCA is inconsistent with the caselaw analyzing misrepresenting counternotifications. In *Moonbug Ent. Ltd.*, 2024 U.S. Dist. LEXIS 87948 at \*51-54 (N.D. Cal. May 15, 2024), the trial court denied a motion for a new trial filed by a defendant on the basis that *inter alia* a jury erred in awarding $10,000.00 in nominal damages for a materially misrepresenting counternotification claim under 17 U.S.C. § 512(f). *Id.* In this case, BVIRAL was forced to initiate this litigation—and incur the related fees and costs as damages—as a result of TSP's misrepresentation.

That trial court conducted the same analysis that BVIRAL requests the Court conduct on these motions for summary judgment, and that analysis has nothing to do with restoration of the underlying video. *See id.* Importantly, a review of the other filings in that case makes clear that restoration of the infringing video was not an issue in that case or a basis for the plaintiff's Section 512(f) claim. *See, e.g.*, *Moonbug Ent. Ltd.*, 2022 U.S. Dist. LEXIS 33613 at \*3-5 (N.D. Cal. Feb. 25, 2022) (Order Granting in Part and Denying in Part Motion to Strike Amended Answer and Dismiss Amended Counterclaims) (discussing the DMCA notifications and counternotifications

issued in that case but not that the allegedly infringing videos were ever restored as a result of the, ultimately materially misrepresenting counternotifications).[3]

Third, and finally, TSP contends—erroneously and for the first time—that BVIRAL cannot prevail on this claim because its licenses with content creators are void for lack of consideration. This argument is addressed substantively below. (*See infra* Arg. II.A.3). For the same reasons discussed therein, TSP's attack on the consideration of Upton Agreement with respect to BVIRAL's affirmative Section 512(f) claim fails. Because each of these arguments fail, TSP is not entitled to judgment as a matter of law with respect to BVIRAL's 17 U.S.C. § 512(f) claim.

The true, undisputed material facts point to the opposite result. As BVIRAL set forth in its original motion for summary judgment, TSP made multiple material misrepresentations in its counter-notice to BVIRAL, and it knew that it did so. TSP's counter-notice provided, in material part:

> We hold a valid license for the claimed content, granted by the original creator, Ann Upton. Despite our diligent attempts to engage the claimant in resolving this matter by presenting our license, obtained in good faith from the creator, the claimant has refused to pursue a reasonable amicable resolution. If the claimant considers that the creator granted conflicting licensing rights to both of us, this issue should be clarified directly with the creator, rather than through Facebook reports directed at us. Based on these circumstances, we believe that our appeal should be upheld on the grounds that we possess a valid license.

(*See* BVIRAL's SUMF ¶ 69). The content of this counter-notification cannot be genuinely disputed.

TSP falsely stated that it had made "diligent attempts" at an "amicable resolution" with BVIRAL. Instead, in TSP's deposition on this issue, its corporate representative admitted that no

---

[3] The defendant who issued the materially misrepresenting counternotifications appealed this case, on other grounds, to the Ninth Circuit, and on November 6, 2025, the Ninth Circuit issued a Memorandum Opinion affirming the trial court. *See* Moonbug Ent. Ltd. v. BabyBus Co., Ltd., Nos. 24-3748 & 24-6757 (9th Cir. Nov. 6, 2025) (mem.).

exchange occurred. (*See id.* ¶¶ 70-71). TSP falsely stated that it "present[ed] our license" to the Upton Video to BVIRAL. (*See id.*). TSP's corporate representative admitted that this was untrue. (*See id.*). Most condemning, TSP admitted that, at the time that TSP issued this counter-notice, TSP <u>did not know</u> whether it actually had any rights in the video and that it used a general form template to issue the counter-notice. (*See id.*). Instead, TSP testified that it issued this counter-notice in retaliation for the breakdown in the parties' negotiations. (*See id.*).

In light of the foregoing, the undisputed material facts show that: (1) TSP made multiple, material misrepresentations in the counter-notice that it issued to Meta in connection with the Upton Video, and (2) that, <u>at the time it made these misrepresentations</u>, it had actual knowledge that these misrepresentations were untrue. (*See id.*). As a result, it is BVIRAL—not TSP—that is entitled to judgment as a matter of law with respect to this claim.

## II. TSP's Counterclaims/Third-Party Claims.

### A. 17 U.S.C. § 512(f).

The same legal framework applies to the analysis surrounding TSP's counterclaim alleging that BVIRAL and Burdon violated the DMCA by making material misrepresentations on their DMCA Notices of Infringement. For the same reasons set forth above, TSP's arguments here fail, and it is BVIRAL who is entitled to judgment as a matter of law based on the undisputed facts of this case.

#### 1. The Undisputed Facts Do Not Support Summary Judgment in TSP's Favor.

TSP's counterclaim under 17 U.S.C. § 512(f) fails as a matter of law because TSP has failed to adduce any evidence of the requisite scienter and, more fundamentally, has failed to identify the "material misrepresentation" that forms the basis of its claim. *See Ningbo Mizhihe I&E*

*Co.*, 2020 WL 2086216, at *3 (holding that a claim under Section 512(f) requires both (1) a material misrepresentation in a takedown counter-notice, and (2) subjective bad faith).

The standard for liability under § 512(f) is not negligence or unreasonableness; it is subjective bad faith—the copyright owner must have actually known its notice was fraudulent. *See Rossi v. Motion Picture Ass'n of Am. Inc.*, 391 F.3d 1000, 1004-05 (9th Cir. 2004) (a copyright owner "cannot be liable simply because an unknowing mistake is made, even if the copyright owner acted unreasonably in making the mistake."). Here, the undisputed record establishes BVIRAL's subjective good faith. BVIRAL's "good faith belief" was based on (1) its "comprehensive due diligence process", (*see* BVIRAL's SUMF ¶ 30) and (2) the express representations and warranties of exclusive, worldwide rights contained in its executed license agreements with the content creators, (*see id.* ¶¶ 58, 78, 90, 100, 110, 120, 131, 143, 161, 178, 193, 202) (in which the licensors would represent and warrant, among other things, that the original owner had the power to grant the rights in question, that the owner was the sole and exclusive owner of the worldwide rights in the work at issue, and that the owner had not previously entered into licenses with respect to the videos or otherwise has "done one or permitted to be done anything which may curtail or impair any of the rights granted" to BVIRAL under each license). Furthermore, BVIRAL's conduct—undisputedly withdrawing mistaken notices "within hours of learning" of a legitimate dispute—is the antithesis of the "knowing" misrepresentation the statute requires or even "willful blindness". (*See id.* ¶¶ 158, 186).

More fundamentally, TSP's claim fails at its inception because TSP cannot identify the alleged "misrepresentation." A Section 512(f) claim requires a false statement, not merely a legal dispute. Yet, TSP's own 30(b)(6) corporate designee, Alexandru Calugar, when repeatedly pressed to identify the specific false statement in BVIRAL's notices, was unable to do so. (*See id.* ¶ 211).

Instead, Mr. Calugar testified that the problem was not a "specifically statement," but rather the "actual action" of sending the notice itself. (*Id.* ¶ 212). This admission is fatal. TSP is not challenging a misrepresentation; it is challenging the very act of DMCA enforcement. Such a claim is not actionable under § 512(f), and it is preempted by the DMCA's comprehensive statutory scheme. Having failed to produce any evidence of scienter and having judicially admitted it cannot even identify the misrepresentation at issue, TSP's claim must be dismissed.

**2. There is No Basis for TSP's Allegations Concerning "Willful Blindness".**

The foregoing notwithstanding, TSP now claims in its Motion that it is entitled to summary judgment on this claim because "[t]here can be no question that BVIRAL and Burdon have repeatedly materially misrepresented TSP's content as being infringing, causing injury to TSP" and that they did so with "willful blindness". (*See* Mot. pp. 20-21). As with its other, hyperbolic arguments, TSP misses the mark here.

While TSP is correct that willful blindness can be used to satisfy the knowledge requirement of 17 U.S.C. § 512(f), *see Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1155 (9th Cir. 2015), the facts of this case do not support the application of that theory here. "To demonstrate willful blindness a plaintiff must establish two factors: '(1) the defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact.'" *Id.* (quoting *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 756 (2011)). "Under this formulation, a willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing and who can almost be said to have actually known the critical facts." *Global-Tech Appliances, Inc.*, 563 U.S. at 769-770.

The facts of this case are inapposite. As discussed above and in BVIRAL's prior briefing, the undisputed facts in the record show that BVIRAL only licensed material after submitting that

13

material to a due diligence process. (*See, e.g.*, BVIRAL's SUMF ¶ 30). In addition, it requires the licensors in those agreements to represent and warrant a litany of facts related to the licensed content, among which that the licensor was the sole and exclusive owner of the worldwide rights in the work at issue, and that he or she had not previously entered into licenses with respect to the videos or otherwise has "done one or permitted to be done anything which may curtail or impair any of the rights granted" to BVIRAL under the license. (*See id.* ¶¶ 58, 78, 90, 100, 110, 120, 131, 143, 161, 178, 193, and 202). Far from supporting TSP's purported willful blindness theory, these facts militate towards the opposite conclusion: that BVIRAL and Burdon are entitled to judgment as a matter of law with respect to this claim because there are no genuine disputes of material fact that neither one "took deliberate actions to avoid learning" the knowledge to which TSP seeks to ascribe them. *See, e.g.*, *Global-Tech Appliances, Inc.*, 563 U.S. at 756.

### 3. TSP's Lack-of-Consideration Argument Fails.

TSP asserts a string of red herring arguments to detract from this clear result. First, it asserts that BVIRAL's licenses with its content creators are void for lack of consideration, such that BVIRAL misrepresented the fact that it had rights in the videos which were the subject of BVIRAL's DMCA Notices of Infringement. (*See* Mot. pp. 8-11). TSP cites to the deposition testimony of Jonathan Burdon to support this proposition and to the text of one of BVIRAL's licenses. (*See id.*). This argument fails on its merits.

As a threshold matter, this defense has not timely been asserted. Rule 8 of the Federal Rules of Civil Procedure requires that certain affirmative defenses, expressly including "failure of consideration" be asserted in a responsive pleading. Fed. R. Civ. P. 8(c). TSP failed to plead this affirmative defense in its Answer. (*See* D.E. 14). While TSP has subsequently moved to amend its Answer to include this defense—doing so during the pendency of summary judgment

14

briefing—this untimely effort is insufficient to cure this defect, as set out in BVIRAL's response in opposition to that Motion.  (*See* D.E. 79).  As a result, it cannot provide TSP with a viable argument on summary judgment.[4]  *See, e.g.*, *Haskell v. Washington Twp.*, 864 F.2d 1266, 1273 (6th Cir. 1988) (excluding a Rule 8(c) defense not raised in a responsive pleading as being waived).

Further, even if timely, TSP's challenge to adequacy of consideration in the license agreements does not nullify these agreements as otherwise valid copyright transfers.  While Tennessee law does allow for third parties, such as TSP to challenge the enforceability of contracts in this context, *see, e.g.*, *Campbell v. Matlock*, 749 S.W.2d 748, 751 (Tenn. Ct. App. 1987), Tennessee law is subservient to federal Copyright Law when it comes to what constitutes a valid copyright transfer or assignment.  *See, e.g.*, *Billy-Bob Teeth v. Novelty, Inc.*, 329 F.3d 586, 592-93 (7th Cir. 2003) (holding that a third party "simply does not hav[e] standing under § 204" of the Copyright Act to challenge a copyright assignment to avoid liability for an infringement claim) (citing *Eden Toys, Inc. v. Florelee Undergarment Co.*, 697 F.2d 27 (2nd Cir. 1982)).  Section 204 of the Copyright Act governs transfers of copyright interests, and it has no consideration requirement.  *See* 17 U.S.C. § 204.  Courts routinely uphold copyright assignments that are gifts, with no consideration given for the transfer.  *See, e.g.*, *Johnson v. Jones*, 885 F. Supp. 1008, 1012 n. 6 (E.D. Mich. 1995) ("Although copyright transfers are often made by contract, they need not be. An assignment or exclusive license of copyrights is treated like a conveyance of property, which may be achieved by gift or sale. Absent consideration, however, nonexclusive licenses are revocable.") (citing M. Nimmer & D. Nimmer, 3 NIMMER ON COPYRIGHT § 10.02[B][5], at 10-25

---

[4]  The same is true of its now-alleged "illegal tying" defense. (*See* Mot., pp. 14-18). As set forth in BVIRAL's Response in Opposition to TSP's Motion to Amend, this proposed amendment—and TSP's legal theory with respect antitrust concerns and the related copyright misuse—is without merit.  (*See* D.E. 79, pp. 6-9).  However, since this purported defense related to BVIRAL's previously pursued copyright infringement claim, analysis of that issue is not relevant here.

15

(1994). As a result, consideration—or any lack thereof even if properly raised by TSP—is irrelevant for purposes of determining a valid copyright transfer under Section 204.

The foregoing notwithstanding, TSP's argument fails, too, because the licenses at issue do have adequate consideration. "Mutuality of promises is 'ample' consideration for a contract" under Tennessee law." *Pugh v. Lady Jane's Haircuts for Men Holding Co.,* LLC, 660 F. Supp. 3d 712, 726 (M.D. Tenn. 2023) (quoting *Sevier Cty. Sch. Fed. Credit Union v. Branch Banking & Tr. Co.*, 990 F.3d 470, 476 (6th Cir. 2021)). In Tennessee, there is a presumption of consideration in written contracts signed by each party. *See* Tenn. Code Ann. § 47-50-103 ("[a]ll contracts in writing signed by the party to be bound, or the party's authorized agent and attorney, are prima facie evidence of a consideration."). Therefore, the burden of overcoming the presumption is on the party claiming lack thereof. *In re Estate of Brown*, 402 S.W.3d 193, 195 (Tenn. 2013).

A determination regarding consideration—particularly TSP's new allegation that this license lacks consideration—is something that can, and should, be determined on the face of the agreement. *See, e.g., Individual Healthcare Specialists, Inc. v. BlueCross BlueShield of Tennessee, Inc.*, 566 S.W.3d 671, 688-92 (Tenn. 2019) (discussing the principles of interpreting contracts under Tennessee law, including the "four corners" approach). The plain text of these licenses is fatal to TSP's consideration argument. The plain text of the licenses is clear—and TSP's argument admits, (*see* Mot. p. 10)—that "[i]n the event that a third party specifically requests the use of the Licensed Material, and [BVIRAL], in its sole discretion, accepts such request, then [BVIRAL] *shall* pay licensor" a preset portion "of the fee obtained by Licensee for such use ("Third Party Fee")." (*See, e.g.*, D.E. 1-1, ¶ II.(1)). Payment of such Third Party Fee is due within thirty (30) days. (*See id.*). The licenses go on to provide that "[i]n the event monies are actually received by Licensee from the resolution of any copyright infringement claims relating to the Licensed

16

Material, [BVIRAL] shall pay Licensor" a preset portion of the net proceeds from any such resolution. (*See id.* ¶ II.(2)). Given the presumption of consideration present in Tennessee law, the plain text of BVIRAL's license agreement evidence sufficient consideration such that the agreements are enforceable.

Contrary to TSP's assertions otherwise, the foregoing fact is corroborated by Burdon's testimony. Contrary to TSP's contentions, Burdon expressly testified that he believes the license "reads for itself" and that the agreement does have consideration. (See D.E. 74-2, Excerpts of the Deposition of Jonathan Burdon, pp. 55:5; 61:11-21) ("[The Agreement] does obligate us to pay [creators] 50 percent of the earnings that we've collected from selling the clip, that it obligates us to paying them 50 percent of the new sums actually earned whenever protecting the infringement fee, so it obligates us to pay them their cuts.").[5] Even if Burdon's testimony undercut the plain text of the license, his testimony is insufficient to create a genuine dispute of fact with respect to the issue of consideration because he is a lay witness testifying about a legal conclusion. *See, e.g.*, *U.S. v. Zipkin*, 729 F.2d 384, 389 (6th 1984) (excluding parol testimony interpreting an order five years after the fact) (citing 3 CORBIN ON CONTRACTS § 554 (1960) ("Determination of legal operation of a contract is always a matter of law for the court.") *and Loeb v. Hammond*, 407 F.2d 779 (7th Cir. 1969) (testimony of attorney on legal significance of documents was properly excluded).

However, even if TSP were correct that the licenses at issue can ultimately be deemed void—which is not the case—this still does not permit TSP to prevail with respect to this claim. 17 U.S.C. § 512(f) is clear that the relevant time to test the knowledge requirement of a party

---

[5] Burdon also confirmed that his answer was not all encompassing and that he could not answer questions that seek a legal conclusion on matters like consideration because he is "not a lawyer." (*See id.*, p. 61:21-23).

issuing a DMCA notice is <u>at the time the notice is issued.</u> *See, e.g.*, *Lenz*, 815 F.3d at 1155 ("To

meet the *Global-Tech* test, Lenz must demonstrate a genuine issue as to whether—before sending

the takedown notification—Universal (1) subjectively believed there was a high probability that

the video constituted fair use, and (2) took deliberate actions to avoid learning of this fair use.").

Neither Burdon nor BVIRAL can be said to have knowledge *at the time* BVIRAL issued the

DMCA Notices of Infringement of TSP's recently constructed argument that these licenses are

void for lack of consideration. There is nothing in the record to support that conclusion. As a

result, this argument fails.

### 4. TSP's Allegations of Having the Priority License are Unfounded in Law and in Fact.

Second, TSP asserts that it has licenses which take priority to BVIRAL's exclusive licenses

pursuant to 17 U.S.C. § 205(e). This argument, too, fails. TSP previously raised this argument in

its unsuccessful Motion for a Preliminary Injunction. (*See* D.E. 39, pp. 16-18). In resuscitating

this argument here, TSP misapplies the law—and misstates the undisputed facts of this case in

doing so. TSP contends that its nonexclusive licenses prevail over BVIRAL's exclusive license

because it had no knowledge of BVIRAL's prior-in-time grant of rights. (*See* Mot., pp. 11-13).

As this Court previously addressed—and rejected—this position in *Bennett v. Navarre*

*Corporation*, 2008 WL 11510552 (M.D. Tenn. Jan. 17, 2008):

> Section 205 of the Copyright Act is a recording statute which sets forth priorities
> based upon registration and notice. *See, Latin American Music Co. v. The*
> *Archdiocese of San Juan*, 499 F.3d 32 (1st Cir. 2007). "Under federal copyright
> law, remedies for infringement are tied to copyright registration, which provides
> incentive to owners to register copyrights and "also provides potential infringers
> with an incentive to check the federal register.'" *Id.* citation omitted.
>
> Tellingly, the statute does not say that one who receives a non-exclusive license
> may continue to exploit material based on that license when one becomes aware of
> another's rights and Defendants have cited no cases which so hold. The Court
> agrees with Plaintiff that Section 205(e) should not be read as intending to mean

18

that a non-exclusive license initially taken without notice of another's rights provides blanket protection from all manners of infringement after the infringing party receives unequivocal notice of another's rights. Such a reading would run counter to the Copyright Act's purpose which is to provide "a uniform system for protecting original expression for the benefit of society at large." *Lanham v. Lewis Galoob Toys, Inc.*, 227 F.3d 619, 623 (6th Cir. 2000). Such a reading would also ignore that Section 205(e) speaks in terms of taking in "good faith" and "without notice." Although the statute's reference is to the period of time when the license is actually taken, the Court does not believe good faith does not or should not apply when a party receives actual notice of another's rights.

* * *

**In sum, the Court finds no authority for the proposition that a party who purportedly receives a non-exclusive license to utilize a work may continue to exploit the work even after becoming aware that another actually owns the rights to the work. While Section 205(e)(2) states a license prevails over a transfer when the license is taken in good faith and without knowledge of the transfer, the Court simply cannot transmogrify what is essentially a recording statute relating to priority into one which would allow someone to circumvent another's exclusive right to a protected work.**

*Id.* at *3-5 (emphasis added). While TSP acknowledges the foregoing, it provides no basis rejecting the approach of this court, except to claim in a footnote that "[t]he *Bennett Court* [sic] did not cite any precedent in this decision", (*see* Mot. p. 11, n. 5), which is evidently inaccurate based on the foregoing excerpt. Based on this precedent, as soon as TSP obtained knowledge of BVIRAL's exclusive interest in a video, TSP could no longer "exploit the work" in question. *Bennett*, 2008 WL 11510552 at *3-5. In short, TSP misapplies the law with respect to relying on Section 205(e) to provide it with priority in the works at issue or otherwise in using Section 205(e) to support its counterclaims in this action.

Further, TSP misstates the facts at issue in this case with respect to its knowledge concerning BVIRAL's exclusive rights in these works at issue. First, TSP had knowledge of BVIRAL's catalog as well as knowledge of how to utilize and search BVIRAL's catalog for videos which BVIRAL claimed exclusive rights as early as June 28, 2023, when BVIRAL provided TSP with

19

access to its catalog during the parties' negotiations. (*See* BVIRAL's SUMF ¶ 38). That catalog was easily searchable, as was demonstrated by TSP's corporate representative at its deposition. (*See id.* ¶ 57) (where TSP's corporate representative searched the BVIRAL database for a video at issue in this litigation). TSP's corporate representative even testified that TSP's "executive producer" actually searched and reviewed BVIRAL's catalog. (*See id.* ¶ 61). TSP calls BVIRAL's position "outrageous[]", (*see* Mot. p. 12); BVIRAL calls it, at a minimum, inquiry notice. *See, e.g.*, *Fox v. Riverdeep, Inc.*, 2008 U.S. Dist. LEXIS 101633, at *10 (E.D. Mich. Dec. 16, 2008) ("For purposes of the Copyright Act, 'notice' includes constructive notice (by recordation of the copyright) as well as actual or inquiry notice.") (citing *Peer Int'l Corp. v. Latin American Music Corp.*, 161 F. Supp. 2d 38, 48 (D. P.R. 2001) and 3 NIMMER ON COPYRIGHT § 10.07[A][2]). As to inquiry notice, the Court in *Fox* noted that "[i]nquiry or presumed notice is generally a question for a jury that hinges on all the attendant facts." *Id.* (quoting *Peer*, 161 F. Supp. 2d at 48). Summary judgment in favor of TSP in reliance on this point is inapposite.

What is more, TSP received *actual* notice of BVIRAL's rights when it received BVIRAL's DMCA Notices of Infringement with respect to the videos at issue in this litigation. Indeed, that is the point of such Notices. *See, e.g.*, *Moonbug Entertainment*, 2022 WL 580788, at *12-15. At a minimum, after the date of receiving such notices, TSP cannot plausibly allege that it retains the ability to exploit content as a result of its purported non-exclusive licenses. *See Bennett*, 2008 WL 11510552 at *3-5.

Finally, while TSP does not provide a detailed video-by-video breakdown of its chain of title in the videos at issue in the litigation, there is no genuine dispute of material fact that many of TSP's nonexclusive licenses derive from an intermediary licensing company, some of whom have purportedly exclusive licenses. (*See* Resp. SUMF ¶¶ 33, 49, 55, 61, 62, 66, 68, 71, 74, 75)

(detailing TSP's licensing arrangements with various licensing intermediaries including Viral Hog, Viral Bear, Newsflare, WooGlobe, and Vin Di Bona Productions). In order for TSP to prevail on its claim of having a purportedly superior license, it bears the burden of proof *at each link in the ownership chain of title*. This would require the application of both 17 U.S.C. § 204(d) and (e). It has not—and cannot—do so. This is likewise fatal to TSP's claim of having priority licenses.

The substantive failure of this argument notwithstanding, TSP still cannot rely on its argument in litigation involving Section 205(e) priority to prevail on its Section 512(f) claims where, again, there are no facts in the record to support the proposition that BVIRAL and Burdon had no knowledge with respect to any purported license by TSP—much less a superior license— *at the time* BVIRAL issued the DMCA Notices of Infringement. This is a requirement of Section 512(f) claims. *See Lenz*, 815 F.3d at 1155. TSP cannot rely on this—factually unsupported— contention of having superior licenses to prevail on this claim.

### B. The State Law Claims.

As set forth in the principal brief of BVIRAL and Burdon, TSP's state law claims fail for a variety of independent bases. As a result, not only is TSP not entitled to judgment as a matter of law, but BVIRAL is entitled to such a judgment as a matter of law.

### 1. Defamation.

As set forth in BVIRAL's Motion for Summary Judgment, the record fails to support TSP's claim for defamation, and it is ripe for dismissal at the summary judgment stage. To succeed on this claim, TSP must show a lack of genuine dispute with respect to each and every of the following elements: "(1) [BVIRAL and/or Burdon] published a statement; (2) with knowledge that the statement was false and defaming to the other; or (3) with reckless disregard for the truth of the

21

statement or with negligence in failing to ascertain the truth of the statement." *Sullivan v. Baptist Memorial Hospital,* 995 S.W.2d 569, 571 (Tenn. 1999).

As also set forth in BVIRAL's Motion for Summary Judgment, it is undisputed in the record that the sole basis for this claim are BVIRAL's DMCA Notices of Infringement. (*See* BVIRAL's SUMF ¶ 212). Far from being statements of fact—the very first element of this tort— these Notices are assertions of legal rights. *see also Moonbug*, 2022 U.S. Dist. LEXIS 33613, at *37 ("Moonbug's DMCA notices … are not 'representations of fact' that disparage the quality of Babybus's goods (videos); instead they assert legal claims of copyright infringement.").

TSP's Motion does not—and cannot—address this deficiency with this cause of action. In actuality, TSP's Motion does not engage in *any* real analysis of this claim. (*See* Resp. pp. 21-22).[6] Instead, it presumptuously contends that "the standard to analyze BVIRAL's false written statements against TSP is a negligence standard, which is easily met as described herein." (*See id.* p. 22). This complete lack of engagement with the elements of this claim falls well short of what is required to prevail on summary judgment. "'Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient

---

[6] Instead, TSP's Motion discusses, in error the applicable standard that should apply to this claim. (*See* Mot. pp. 21-22). While TSP is correct that this litigation involves private litigants, it errs in determining that this is not a matter of public interest and that mere negligence is the appropriate standard. Tennessee case law is clear that this is not the case *See West v. Media Gen. Convergence, Inc.*, 53 S.W.3d 640, 647 (Tenn. 2001) ("In *Time, Inc. v. Hill*, 385 U.S. 374, 87 S. Ct. 53, 17 L.E.2d 456 (1967), the Court extended the actual malice standard to allegedly defamatory statements about matters of public interest."). The DMCA Notices of Infringement here are matters of public interest. *See Complex Media, Inc. v. X17, Inc.*, 2019 U.S. Dist. LEXIS 128129, at *12 (C.D. Cal., Mar. 4, 2019) (holding that DMCA Notices issued in that case "affecting the availability of videos in this large online community [2.4 million subscribers] is a concern for each subscribing member of the public and thus, "an issue of public interest."). According to TSP, its viewership numbers are well in excess of this amount. (*See* Resp. SUMF ¶ 1) ("TSP has more than 600 million Facebook followers, more than 1.2 billion YouTube subscribers, more than 70 million Instagram followers, and its content receives more than 25 billion monthly views").

for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.'" *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293-94 (1st Cir. 1995)); *cf. Emerson v. Novartis Pharms. Corp.*, 446 F. App'x 733, 736 (6th Cir. 2011) ("Judges are not like pigs, hunting for truffles that might be buried in the record[.]") (citation omitted).

TSP's failure to actually analyze this cause of action is unsurprising. In addition to the lack of a misrepresentation of fact in BVIRAL's DMCA Notices of Infringement, there are no facts in the record to support either of the last two elements of this cause of action. Nevertheless, because TSP cannot establish a lack of a genuine dispute of fact regarding this first element of its defamation claim, its argument on the remaining elements need not be addressed.

This cause of action plainly fails.

### 2. Intentional Interference with Contract.

TSP also fails with respect to its intentional interference with contract claim. To prevail, it must show a lack of genuine dispute with respect to each and every of the following elements:

> (1) that a legal contract existed; (2) that the defendant was aware of the contract; (3) that the defendant intended to induce a breach of that contract; (4) that the defendant acted with malice; (5) that the breach of the contract occurred; (6) that the breach was a proximate result of the defendant's conduct; and (7) that the breach injured the plaintiff.

*Tennison Bros., Inc. v. Thomas*, 2014 WL 3845122, at *13 (Tenn. Ct. App. Aug. 6, 2014). As BVIRAL set forth in its Motion for Summary Judgment, the undisputed facts in the record show that TSP cannot establish multiple elements of this claim, and summary judgment is proper in BVIRAL's favor.

As with its defamation claim, TSP engages in a cursory analysis of this cause of action. (Mot. pp. 22-23). When it comes to the very first element "that a legal contract existed", TSP asserted in its deposition that the "Facebook Creator Content Monetization Terms" (the "Facebook Agreement") was the contract that Meta allegedly breached in this case. (*See* BVIRAL's SUMF ¶¶ 214-16). In its Motion, TSP confirmed this was the case, and the Facebook Agreement was the only contract cited in its Statement of Undisputed Facts. (*See* Mot. p. 23); (Resp. SUMF ¶ 28) (citing to the Facebook Agreement for the proposition that "TSP owns operates several different Facebook pages, where in accordance with an agreement and course of business with Facebook/Meta, TheSoul earns a share of the revenue generated by visits to a respective Facebook page.").

The plain language of the Facebook Agreement makes clear that it was not effective until July 15, 2024. (*See id.* ¶ 217). However, TSP alleges that BVIRAL caused the alleged "breach" and demonetization of its pages "*by mid-June 2024* [causing] TheSoul to lose between approximately $171,000 and $204,000 in revenue that would have been received but-for False DMCA Notices." (*See* Counterclaim, D.E. 14 ¶ 47) (emphasis added). The later-in-time Facebook Agreement cannot factually support this claim, and TSP cannot show any actual contract in the record that was breached by Meta, or by TSP, as a result of BVIRAL's DMCA notices.

Further, TSP fails to identify any specific, *actual* breach that occurred as a direct and proximate result of BVIRAL's DMCA Notices of Infringement. TSP claims, in a general manner, that these Notices "caused Facebook to breach its agreement with TSP by denying TSP a share of revenue derived from traffic to its Facebook pages." (Resp. p. 23). Again, TSP's failure to engage with the actual text of the contract is understandable: the terms of the Facebook Agreement make clear that no actual breach occurred. The Facebook Agreement plainly requires TSP to "only

24

provide Content for which you own and/or control all rights (or have obtained all necessary licenses/permissions to such rights), globally, including rights in any sound records or musical compositions included in the Content and any performers appearing in it, and your Content will not infringe the rights of any third parties." (*See* BVIRAL SUMF ¶ 218). As discussed in BVIRAL's Motion for Summary Judgment, TSP clearly failed to abide by this eligibility requirement and, with respect to almost every video subject to the takedowns in this case, BVIRAL had actual superior rights in the underlying work. (*See id.* ¶¶ 56-74, 77-151, 192-210).

TSP has the burden of proof with respect to each and every element of this tort. There are no facts in the record to support the existence of an actual contract that was breached in this case, and there is no evidence that an actual breach occurred (much less evidence of malice or proximate causation). BVIRAL and Burdon are entitled to summary judgment as a result.

### 3. Intentional Interference with Business Relationships.

As with the other state law claims, TSP's analysis boils down to its conclusory statement that "TSP has clearly met" the standard for this claim, without actually engaging in each and every element of this claim, as is required on summary judgment when the movant bears the burden of proof. *See, e.g.*, *EJ Footwear, LLC*, 2006 WL 2265463, at *3. This cursory analysis falls well short of the standard required of TSP. *See, e.g.*, *McPherson*, 125 F.3d at 995-96 (6th Cir. 1997) "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (internal quotations omitted).

If TSP were to succeed on this claim, it would be required to show no genuine dispute of material fact with respect to each and every of the following elements:

> (1)An existing business relationship with specific third parties or a prospective relationship with     an identifiable class of third persons; (2)     the     defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach or

25

termination of the business relationship; (4) the defendant's *improper motive or improper means,* and finally, (5) damages resulting from the tortious interference.

*Trau-Med of America, Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 (Tenn. 2002) (internal citations omitted) (emphasis in original). TSP has not—and cannot—satisfy each of these elements, and as a result, it is not entitled to summary judgment here. As set forth in BVIRAL's Motion for Summary Judgment, there is no genuine dispute of material fact that BVIRAL and Burdon utilized the tools available to them in the DMCA to protect BVIRAL's exclusive rights and interest in its videos. (*See* BVIRAL's SUMF ¶¶ 10-15, 212, 213, 220, 223).

Assuming *arguendo* the other elements of this cause of action, there is no genuine dispute of material fact that TSP's claim fails with respect to the third and fourth element. The undisputed facts of this case are that—far from seeking a termination of any third-party business relationships—BVIRAL and Burdon had a singular goal: to protect the exclusive intellectual property rights in which BVIRAL had invested a considerable sum. (*See id.* ¶¶ 10-15, 223). Further, rather than employ improper motive or improper means, BVIRAL and Burdon solely utilized the tools available to them via the DMCA. (*See* BVIRAL's SUMF ¶¶ 212, 213, 220).

### 4. Preemption & The TPPA.

TSP's Motion is silent with respect to the issue of preemption as to its State Law Claims. However, as set forth in BVIRAL's Motion, the DMCA's preemptive effect on these claims acts as a complete bar to recovery. (*See* D.E. 73-1, pp. 15-17). As also set forth in BVIRAL's Motion, the substantive remedies of the TPPA also act as a complete bar to TSP's State Law Claims. (*See id.* pp. 18-21). The effect of the DMCA's preemption and the TPPA's bar is the same—BVIRAL is entitled to judgment as a matter of law with respect to TSP's State Law Claims.

### CONCLUSION

BVIRAL and Burdon respectfully request that the Court deny TSP's Motion.

26

Respectfully submitted,

*/s/ Jacob T. Clabo*
Jay S. Bowen, Esq., (TN Bar No. 2647)
Jacob T. Clabo, Esq., (TN Bar No. 36760)
**GRIFFIN BOWEN, PLLC**
48 Music Square East
Nashville, TN 37203
T: (615) 742-4800
jbowen@griffinbowen.com
jclabo@griffinbowen.com


Lauren M. Spahn, (TN Bar No. 032377)
Tsveta Todorova-Kelly (TN BPR NO. 039940)
**BUCHALTER, A PROFESSIONAL CORPORATION**
1 Music Circle South, Suite 300
Nashville, TN 37203
T: (629) 305-9675
lspahn@buchalter.com
ttodorovakelly@buchalter.com

*Attorneys for Plaintiff/ Counter-Defendant SocialCoaster, Inc. d/b/a BVIRAL and Counter-Defendant Jonathan Burdon*

27

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was served on the following via Certified U.S. Mail and electronic mail on November 7, 2025 to:

Frank Scardino, Esq. (*Admitted Pro Hac Vice*)
Valentin Gurvits, Esq. (*Admitted Pro Hac Vice*)
**BOSTON LAW GROUP, PC**
825 Beacon Street, Suite 20
Newton, MA 02459
T: (617) 928-1804
frank@bostonlawgroup.com
vgurvits@bostonlawgroup.com

S. Chase Fann, Esq.
**SPENCER FANE BONE MCALLESTER, LLP**
511 Union Street, Suite 1000
Nashville, TN 37219
T: (615) 238-6395
F: (615) 238-6301
cfann@spencerfane.com

*Attorneys for Defendant/Counter-Plaintiff*
*ADME (CY) LTD d/b/a TheSoul Publishing*

*/s/ Jacob T. Clabo*

28